Oscar **CANTU**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 598–95, 599–95.

Court of Criminal Appeals of Texas, En Banc.

Sept. 18, 1996.

---

Juan Villescas, Pharr, Dorina Ramos, McAllen, for appellant.

Matthew Paul, Asst. State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge.

Appellant was convicted of murder and two counts of aggravated assault on a peace offi-

cer. Before the court of appeals, appellant argued that he was deprived of his constitutional right to the assistance of counsel for two reasons: (1) that his attorney, Dan Longoria, committed errors resulting in actual prejudice to appellant under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) that the attorney's suspension from the practice of law before trial constituted a *per se* denial of appellant's right to counsel. The court of appeals reversed on the latter basis. The court formulated a substantive/technical dichotomy: it held that a *per se* violation of the Sixth Amendment exists where the attorney was suspended or disbarred for substantive disciplinary infractions but not where the attorney was suspended for mere technical violations. Holding that Longoria's suspension was for substantive reasons, the court of appeals found a *per se* violation of the right to counsel. The State petitioned for discretionary review. We will reverse.

■ The facts surrounding appellant's claims were presented in a hearing on appellant's motion for new trial. Several witnesses, including Longoria, testified at the hearing. Because the trial court was in a position to evaluate the credibility of the witnesses, we view the evidence in the light most favorable to the trial court's ruling. *Vuong v. State,* 830 S.W.2d 929, 938 (Tex. Crim.App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

In the light most favorable to the trial court's ruling, the evidence shows the following: Longoria was suspended from the practice of law for failing to respond to demands from the State Bar Grievance Committee for information. In suspending him, the Committee found a pattern of failure to respond or react. The suspension did not relate to Longoria's performance in the courtroom. Notice of the suspension was sent by certified mail on May 28, 1993, and was received at Longoria's address on June 3. However,

Longoria did not open his mail because he was preparing for trial; he remained unaware of the suspension until he was personally served on June 15. Appellant's trial took place from June 7 to June 11. The Committee judgment provided that the suspension would begin on June 1—six days before appellant's trial. While a grievance committee may stay a suspension, pending appeal, if it finds that the respondent attorney "does not pose a continuing threat to the welfare of Respondent's clients or to the public," Tex.R.Disc.P. 2.21, no such finding was made in the present case.

The question in the case before us is whether Longoria's suspension caused appellant a complete denial of the right to counsel. If so, appellant would be relieved of the *Strickland* requirements of showing specific attorney errors and prejudice. 466 U.S. at 692, 104 S.Ct. at 2067 (where a defendant suffers the "actual or constructive denial of counsel altogether" then prejudice is presumed). Because we face a question of first impression, we look to other jurisdictions for guidance.

It has been uniformly recognized that a layman masquerading as an attorney—that is, one who has never been a licensed attorney in any jurisdiction—can never be considered "counsel" under the Sixth Amendment regardless of the skill exercised by the layman. *Solina v. United States,* 709 F.2d 160 (2nd Cir.1983). *Vance v. Lehman,* 64 F.3d 119, 122 (3rd Cir.1995) (citing cases), *cert. denied sub. nom., Vance v. Horn,* —— U.S. ——, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996). *Bond v. United States,* 1 F.3d 631, 637 (7th Cir.1993). *United States v. Hoffman,* 733 F.2d 596, 599–600 (9th Cir.1984) (citing cases), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). *People v. Allen,* 220 Ill.App.3d 772, 162 Ill.Dec. 872, 879, 580 N.E.2d 1291, 1298 (1991), *appeal denied,* 147 Ill.2d 629, 180 Ill.Dec. 152, 606 N.E.2d 1229 (1992). *Commonwealth v. Thibeault,* 28 Mass.App.Ct. 787, 556 N.E.2d 403, 405 (1990) (citing cases). *State v. Smith,* 476 N.W.2d 511, 513 (Minn.1991).[1] On the other hand,

---

1. Some jurisdictions have expressly held that an attorney with a fraudulently obtained license should be treated as having never procured a license. *United States v. Novak,* 903 F.2d 883 (2nd Cir.1990). *Thibeault,* 556 N.E.2d at 406 n. 7 (citing cases).

American jurisdictions have also uniformly held that a defendant is not denied counsel merely because his attorney was under suspension for a mere technical defect or violation. *Hunnicutt v. State*, 531 S.W.2d 618, 623–624 (Tex.Crim.App.1976), *overruled on other grounds, Hurley v. State*, 606 S.W.2d 887, 890 (Tex.Crim.App.1980). *Vance*, 64 F.3d at 123 n. 1 (citing cases). *State v. Green*, 274 N.J.Super. 15, 643 A.2d 18, 24 (citing cases), *certif. denied*, 137 N.J. 312, 645 A.2d 141 (1994).[2] The question confronted in the present case, however, is how to classify and evaluate situations which fall in between these two extremes.

The Supreme Court of Michigan has recently rejected a substantive/technical distinction espoused by Michigan's intermediate appellate court. *People v. Pubrat*, 451 Mich. 589, 548 N.W.2d 595, 598–599 (1996), *reversing*, 206 Mich.App. 340, 520 N.W.2d 724 (1994). Likewise, other courts confronting the issue have refused to apply such a distinction. *Waterhouse v. Rodriguez*, 848 F.2d 375 (2nd Cir.1988) (no Sixth Amendment violation despite the fact that attorney had been disbarred for misappropriating client funds and for failing to represent clients after accepting fees). *United States v. Mouzin*, 785 F.2d 682 (9th Cir.) (no Sixth Amendment violation despite the fact that attorney had been disbarred for failing to meet deadlines in pending appeals, failing to prosecute an appeal, and giving an insufficient check in payment for court reporter services), *cert. denied sub. nom., Carvajal v. United States*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). *United States v. Stevens*, 978 F.2d 565 (10th Cir.1992) (disbarred attorney posed no Sixth Amendment problem where he was unaware of disbarment until after trial). *People v. Johnson*, 273 Cal.Rptr. 446 (Cal. App.1990) (no Sixth Amendment violation despite the fact that attorney had been suspended for committing upon a child a forcible lewd act, a crime of moral turpitude), *rev'd on other grounds sub. nom., In re Johnson*, 1 Cal.4th 689, 4 Cal.Rptr.2d 170, 822 P.2d 1317 (1992). *Thibeault*, 556 N.E.2d at 404–407 (no Sixth Amendment violation despite the fact that attorney had been suspended because he had been convicted of the crime of receiving stolen property), *cited favorably by Commonwealth v. McGuire*, 421 Mass. 236, 656 N.E.2d 895, 896 (1995) (also citing *Waterhouse* and *Mouzin*). *Allen*, 162 Ill.Dec. at 879–81, 580 N.E.2d at 1298–1300 (no Sixth Amendment violation despite the fact that attorney had been suspended for failing to file an appellate brief on behalf of a defendant in an unrelated criminal case). *Smith*, 476 N.W.2d at 512–517 (no Sixth Amendment violation despite the fact that attorney had been suspended for misappropriating client funds, failing to maintain trust account records, neglect of client matters, failing to return client documents promptly, and failing to communicate adequately with clients).

To determine accurately the effect of an attorney's suspension or disbarment for substantive reasons on his client's Sixth Amendment rights, it is helpful to examine the reasons for denying "counsel" status to one who has never been licensed and to explore how courts have addressed these reasons in the context of suspended or disbarred attorneys. Courts have given four different reasons for finding a *per se* violation of the Sixth Amendment when a defendant is represented by a layman (one who has never been licensed): (1) to validate jurisdictional concerns, (2) to prevent conflicts of interest, (3) to maintain confidence in the judicial system, and (4) to safeguard against incompetent representation.

Jurisdictional concerns associated with a non-licensed individual were first enunciated by the Second Circuit in *Solina.* The court discussed the Supreme Court decision of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) as advancing the "somewhat surprising thesis that absence of counsel constituted a jurisdictional defect." *Solina*, 709 F.2d at 169. The Second Circuit concluded that the jurisdictional nature of the right to counsel required the application of a *per se* rule of reversal whenever a defendant is represented by someone who

---

**2.** One intermediate appellate court has apparently held, with little discussion, that suspension or disbarment constitutes a complete denial of counsel *per se*, regardless of the reasons for the attorney's unlicensed status. *State v. Newcome*, 62 Ohio App.3d 619, 577 N.E.2d 125, 126 (1989).

has never been licensed to practice law in any jurisdiction. *Id.* at 168.

Although the "jurisdictional" rationale remains in use, courts have refused to apply it to attorneys who were initially validly licensed but were later suspended or disbarred. The Second Circuit has applied its *per se* rule in limited circumstances and "without enthusiasm." *Bellamy v. Cogdell,* 974 F.2d 302, 306 (2nd Cir.1992), *cert. denied,* 507 U.S. 960, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993). *See also Thibeault,* 556 N.E.2d at 406. Subsequent to *Solina,* the Second Circuit has distanced itself from the "jurisdictional" argument when considering the effects of suspension or disbarment and has relied upon what it termed *Solina*'s "alternative rationale" (conflict of interest—see below). *Waterhouse,* 848 F.2d at 382–383. *See also Johnson,* 273 Cal.Rptr. at 454. The court has also explained that "disbarment is not necessarily the equivalent of nonadmission." *Novak,* 903 F.2d at 889. Other courts have emphasized that the never-been-licensed person cannot provide the effective assistance of counsel because he has "never acquired the threshold qualification to represent a client." *Mouzin,* 785 F.2d at 697. *Allen,* 162 Ill.Dec. at 879, 580 N.E.2d at 1298. Unlike the layman, an attorney has "acquired the threshold qualification to represent a client" although he may later become ineligible to do so because of suspension or disbarment.

To extend the "jurisdictional" rationale beyond never-been-licensed persons would also conflict with the cases holding that technical violations do not run afoul of the Sixth Amendment. While state law may sometimes permit technical violations to be cured retroactively after the defect is removed, *see Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim. App.1965) (failure to pay bar dues), technical violations do not constitute a denial of counsel even when removing the defect would not retroactively restore counsel's good standing status. *Reese v. Peters,* 926 F.2d 668, 669–670 (7th Cir.1991) (no Sixth Amendment violation even though representation during trial while suspended for failure to pay dues constituted the unauthorized practice of law and subsequent payment of dues would not

retroactively restore status). If continued licensed status were a jurisdictional prerequisite to the requirement of counsel, then suspension for technical violations could not rationally be exempted from a *per se* rule finding a complete denial of counsel. But even *Solina* recognized that technical violations should not be included in a *per se* rule. 709 F.2d at 167 & 167 n. 9. Hence, the "jurisdictional" rationale only applies to never-been-licensed laymen. Once an attorney has fulfilled the "threshold" requirements for legal practice, a *per se* rule cannot be justified on a jurisdictional basis regardless of the attorney's subsequent change in status.

The second rationale relates to preventing conflicts of interest and has been referred to as the "alternative rationale" in *Solina. See Waterhouse,* 848 F.2d at 382–383. The layman masquerading as an attorney suffers from an inherent conflict of interest because he is "engaging in a crime":

> Such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials. Yet a criminal defendant is entitled to be represented by someone free from such constraints.

*Solina,* 709 F.2d at 164. *See also Mouzin,* 785 F.2d at 699. *Stevens,* 978 F.2d at 567. *Allen,* 162 Ill.Dec. at 880, 580 N.E.2d at 1299. With all due respect to the courts making this argument, we believe the "fear of discovery" is more likely to cause the reverse effect: a layman masquerading as an attorney would be more afraid that a poor defense would lead to inquiries about his background by the trial judge, the prosecutor, and his own client. By contrast, a good defense would likely enable the layman to maintain the facade. One would think that the layman would be most wary of his own client, who has the greatest stake in the trial's outcome. The client is more likely to file appeals or postconviction writs alleging ineffective assistance of counsel if the layman's performance is perceived to be lacking.

Perhaps the argument could be made that a layman would mistakenly perceive that a vigorous defense would be more likely to lead

to investigation. Perhaps a layman would be unaware of the threat of *Strickland* claims from his own client. But an attorney—even one with his license suspended or revoked—would most probably understand that the threat of exposure would come not from prosecutors and judges but from a disgruntled client sitting in prison with time on his hands.

Moreover, the conflict of interest rationale clearly has no application to an attorney who, although aware of pending disciplinary proceedings, remains unaware of his suspension or disbarment during the criminal defendant's trial. *Waterhouse*, 848 F.2d at 383. *Stevens*, 978 F.2d at 567–568. The mere possibility that an attorney might be distracted by pending disciplinary proceedings is not sufficient to rise to the level of a *per se* conflict of interest. *Allen*, 162 Ill.Dec. at 881, 580 N.E.2d at 1300. In fact, an attorney "under fire for past misconduct is likely to be highly motivated to give the best professional representation possible." *Vance*, 64 F.3d at 125. *See also Waterhouse*, 848 F.2d at 383. Where an attorney is unaware of suspension or disbarment during trial, he is in a similar position to attorneys who were not suspended or disbarred until *after* trial. In the latter situation, courts have also found no inherent conflict of interest. *Bellamy*, 974 F.2d at 308. *Vance*, 64 F.3d at 125.

Of course, the particular circumstances surrounding an attorney's suspension or disbarment may give rise to an actual conflict of interest. *See United States v. DeFalco*, 644 F.2d 132 (3rd Cir.1980) (counsel who committed a crime entered into a plea bargain with the same U.S. attorney's office and judge who participated in counsel's client's trial). However, such cases may generally be addressed under the standards formulated for conflicts of interest by the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *United States v. Costanzo*, 740 F.2d 251, 259 (3rd Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). *Vance*, 64 F.3d at 124–125. *Mouzin*, 785 F.2d at 699.

The third rationale—maintaining confidence in the judicial system—has been articulated most clearly by the Minnesota Supreme Court:

> Conceivably, a nonlawyer might do a lawyerly enough job, but if the criminal justice system is to maintain its structural integrity, if it is to have the public's trust, then an accused must be represented by counsel who has received the training necessary for admission to the bar and who, as a lawyer admitted to the bar, is subject to the court's supervision.

*Smith*, 476 N.W.2d at 513. While a layman is not subject to supervision by the bar, a suspended attorney is still subject to further bar sanctions. *Thibeault*, 556 N.E.2d at 407 & 407 n. 13. Even a disbarred attorney may be subject to sanctions to the extent that he may later apply for readmission. *See* Tex. R.Disc.P. 11.01, 11.02, 11.03, & 11.05. He may also be subject to suspension or disbarment in other jurisdictions. To some extent then, representation by a suspended or disbarred attorney involves less erosion of public confidence than representation by a complete imposter.

Moreover, the interest in promoting confidence in the integrity of the system must also be balanced against the need to preserve convictions "where guilt has been fairly established by the evidence in proceedings conducted with reasonable competence by counsel." *Smith*, 476 N.W.2d at 514. Further, preventing the unnecessary reversal of just convictions is not only an important interest in itself, it is also important to maintaining public confidence in the system. Hence, where suspended or disbarred attorneys are involved, the interest in preserving just convictions outweighs the possible erosion of public confidence that might result from the absence of a *per se* rule, especially where the bar is empowered to sanction the offending attorneys. *See Smith*, 476 N.W.2d at 514. *See also Thibeault*, 556 N.E.2d at 407.

The final rationale for imposing a *per se* rule against laymen—to safeguard against incompetent representation—goes to the heart of the right to the assistance of counsel. In essence, a *per se* rule is imposed as a prophylactic measure to protect a defendant's right to the effective assistance of counsel. This possible rationale was recog-

nized briefly by the Second Circuit in *Solina:* "Perhaps, on the other hand, something is to be said for an automatic rule that relieves courts of the difficult task of making harmless error determinations in lack of counsel cases where the representation is more nearly suggestive of prejudice...." 709 F.2d at 169. Likewise, the Third Circuit has explained that there are some "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Vance,* 64 F.3d at 122, quoting *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). These circumstances "are very rare" but included in the list is the situation "where the defendant is represented by someone with little or no legal training who is masquerading as an attorney." *Vance,* 64 F.3d at 122. Other courts have explained that admission to the bar permits a presumption of competence: "Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him." *Mouzin,* 785 F.2d at 698. *Allen,* 162 Ill.Dec. at 880, 580 N.E.2d at 1299. But if a person has never been admitted to the bar, the courts cannot presume that he is competent to practice law.

The competence rationale has produced mixed results. On occasion, an attorney has been found incompetent as a matter of law based upon the circumstances surrounding disbarment or nonlicensure. *United States v. Merritt,* 528 F.2d 650 (7th Cir.1976) (attorney licensed in Iowa but who failed bar examination three times in Indiana, was representing first client, and left after trial for non-legal job without ever having represented another client—found ineffective as a matter of law in light of several questionable incidents even though such incidents, in isolation, would not lead to an inference of ineffectiveness). *People v. Hinkley,* 193 Cal. App.3d 383, 238 Cal.Rptr. 272 (1987) (attorney placed on "inactive status" for reasons relating to incompetence). But we have already cited other cases in which courts refused to find an automatic Sixth Amendment violation based upon suspension or disbarment for substantive reasons. *See Waterhouse, Mouzin, Johnson, Thibeault, Allen,*

and *Smith,* cited *infra.* While the competence rationale can support a case-by-case determination of incompetence as a matter of law, we do not believe that the rationale can support a *per se* rule that suspended or disbarred counsel constitutes an automatic Sixth Amendment violation.

The Supreme Court has explained that *per se* rules should apply only when they will usually reach the correct result as an empirical matter:

[Per se rules are] designed to avoid the costs of excessive inquiry where a per se rule will achieve the correct result in almost all cases. As we explained in a different context: "Per se rules ... require the Court to make broad generalizations.... Cases that do not fit the generalization may arise, but a per se rule reflects the judgment that such cases are not sufficiently common or important to justify the time and expense necessary to identify them." [Citation omitted]. Per se rules should not be applied, however, in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time.

*Coleman v. Thompson,* 501 U.S. 722, 737, 111 S.Ct. 2546, 2558, 115 L.Ed.2d 640 (1991). *See also Bellamy,* 974 F.2d at 308. *Bond,* 1 F.3d at 636. Similar considerations underlie the use of prophylactic rules such as those announced in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

Although recognizing that the *Miranda* rules would result in the exclusion of some voluntary and reliable statements, the Court imposed these "prophylactic standards" on the States [citation omitted] to safeguard the Fifth Amendment privilege against self-incrimination.

*Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990).

Under the competence rationale, a *per se* rule is appropriate for the never-been-licensed layman because we can infer that the rule reaches the correct result most of the time. Persons who have not passed the

threshold requirements for membership in the bar cannot be expected to provide competent representation, and it is surely true that most laymen could not in fact do so. While some laymen may in fact have the requisite knowledge and skill, the chance that such persons may commit significant errors is great enough that the courts should not risk the possibility that a layman might commit prejudicial errors that would escape an appellate court's notice under a traditional *Strickland* analysis. A *per se* rule against never-been-licensed laymen is essential to safeguarding the Sixth Amendment right to the effective assistance of counsel.

This reasoning does not hold for attorneys who were suspended or disbarred for substantive reasons. Substantive reasons include not only incompetence but also ethical misconduct and other conduct showing bad moral character. The latter two reasons do not necessarily preclude the competent representation of criminal defendants. The Supreme Court has recognized that "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside*, 475 U.S. 157, 165, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986). *See also Bond*, 1 F.3d at 636. In *Johnson*, the intermediate California appellate court held that committing a crime of moral turpitude did not necessarily establish incompetence as a matter of law. 273 Cal.Rptr. at 453–454. The court distinguished a prior California case (*Hinkley*) on the basis that the prior case involved discipline based upon "a finding of incompetence." *Id.* at 453. While the California Supreme Court reversed on the ground that the California constitution guaranteed the right to an attorney who is a member of the state bar,[3] that court agreed that the commission of a crime did not establish incompetence as a matter of law. *In re Johnson*, 1 Cal.4th 689, 4 Cal.Rptr.2d 170, 175, 822 P.2d 1317, 1322 (1992). The court explained that suspension for criminal conduct, unethical behavior, or other acts showing bad character does not necessarily reflect a lack of competence:

Moreover, a conclusion that an attorney who has committed an offense of moral turpitude is unfit to practice law is not necessarily a judgment on the attorney's professional competence. We do not presume that a suspended attorney lacks professional competence. "Merely because an attorney has been disciplined for some infraction of the rules by which he must abide is no reason for assuming that he is not a qualified and efficient lawyer. Erring morally or by breach of professional ethics does not necessarily indicate a lack of knowledge of the law." [Citations omitted]. Professional competence is only one element in determining whether an individual is "fit" to practice law. Professional competence *and* good moral character are required for admission to practice. [Citation omitted]. Commission of acts manifesting moral turpitude may establish unfitness even if an attorney's professional competence is not disputed.

*Id. See also Pubrat*, 548 N.W.2d at 595.

Moreover, even where the reasons for suspension or disbarment relate to competence to practice law, courts have generally refused to impose a *per se* rule. *See Mouzin, Allen*, and *Smith. But see Hinkley.* While the intermediate California appellate court in *Hinkley* imposed a *per se* rule for being placed on "inactive status" (i.e. disbarment) for reasons related to competence, 238 Cal. Rptr. at 274–276, this holding leaves open the question of whether a *suspension* for a competence-related reason would automatically result in a finding of incompetence as a matter of law. Likewise, *Merritt* has been interpreted as providing merely that non-licensure may constitute ineffectiveness as a matter of law on a case-by-case basis. *Hoffman*, 733 F.2d at 601 ("We read the Seventh Circuit's opinion as refusing to apply a per se rule."). *See also Mouzin*, 785 F.2d at 697–698.

Three courts have expressly adopted a case-by-case rule for determining whether the loss of licensure renders an attorney incompetent as a matter of law. *Mouzin*, 785 F.2d at 698 (9th Cir.). *Allen*, 162 Ill.Dec.

---

3. In California, a suspended attorney is still considered a "member of the bar," but an attorney who is placed on "inactive status" (disbarred) is no longer a member.

at 880, 580 N.E.2d at 1299 (Ill.App.). *Smith,* 476 N.W.2d at 514 (Minn.). The Ninth Circuit explained:

> Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to be—an attorney qualified to advise and represent a client. But it is an undeniable fact of experience that lawyers unhappily incur sanctions ranging from censure to disbarment; that sometimes that discipline flows from revealed incompetence or untrustworthiness or turpitude as to deserve no client's confidence. All we need hold here is that a lawyer's services were ineffective on a case, not a per se, basis.

*Mouzin,* 785 F.2d at 698. *See also Allen,* 162 Ill.Dec. at 880, 580 N.E.2d at 1299. The Minnesota Supreme Court has also explained:

> We can conceive, too, that there may be a rare case when the substantive reasons for loss of licensure are so egregious, so notoriously bad, that it might be said that these reasons alone render the proceedings unfair and unreliable.

*Smith,* 476 N.W.2d at 514.[4]

The reluctance to adopt a *per se* rule is understandable because an isolated mistake does not necessarily indicate incompetence. "[E]xperience has taught us that lawyers, like other human beings, occasionally fall from grace." *Vance,* 64 F.3d at 123. "[T]he reasons for loss of licensure can be so varied in kind and degree that imposition of a per se rule is inappropriate." *Smith,* 476 N.W.2d at 513. This recognition is perhaps reflected by the general policy of federal courts to refuse to find incompetence as a matter of law in federal trials despite the fact that the attorney has lost his license in the predicate state bar for reasons relating to competence. *United States v. McKinney,* 53 F.3d 664, 675 (5th Cir.1995) (failure to complete MCLE requirements), *cert. denied,* —— U.S. ——, 116 S.Ct. 261, 133 L.Ed.2d 184 (1995).

The above discussion leads to several conclusions. First, a never-been-licensed layman (imposter) can never be considered "counsel" under the Sixth Amendment and representation by such a person will always constitute a complete denial of counsel.[5] A different rule obtains for attorneys who were once validly licensed but have subsequently been suspended or disbarred. We believe that the Sixth Amendment's concerns are satisfied by a case-by-case approach. A suspended or disbarred attorney is incompetent as a matter of law if the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question.[6] It is possible that the reasons for discipline could be so egregious that the attorney would not be competent to represent *any* criminal defendant. Or, the reasons for discipline might in some way be relevant to the attorney's responsibilities in the proceedings in question so as to give rise to an inference that the attorney was incompetent to participate in those particular proceedings. In either event, relevant factors for determining whether an attorney is incompetent as a matter of law include, but are not necessarily limited to, the following: (1) severity of the sanction (suspension versus disbarment;[7] length of suspension), (2) the rea-

---

4. Even where the circumstances surrounding suspension or disbarment do not automatically show incompetence, some courts have held that those circumstances warrant reviewing attorney conduct during the representation with more careful scrutiny. *Thibeault,* 556 N.E.2d at 407 (Mass.). *Smith,* 476 N.W.2d at 514 (Minn.).

5. We do not mean to include within the lay category an attorney with mere technical defects in licensing. *See Solina,* 709 F.2d at 167 & 167 n. 9. We express no opinion about attorneys who fraudulently obtain their licenses, nor do we express any opinion about the situation in which a defendant, knowing an imposter's status, consents to representation.

6. We do not decide whether an attorney's knowledge of his own unlicensed status during representation of a defendant could ever result in a complete denial of counsel as a matter of law based upon a conflict of interest rationale. In the present case, Longoria was ignorant of his unlicensed status.

7. Relying in part upon *Erdelyan v. State,* 481 S.W.2d 843 (Tex.Crim.App.1972), the recent Michigan Supreme Court decision in *Pubrat,* and

sons for the discipline, (3) whether the discipline was based upon an isolated incident or a pattern of conduct (4) similarities between the type of proceeding resulting in discipline and the type of proceeding in question, (5) similarities between kinds of conduct resulting in the attorney's discipline and any duties or responsibilities the attorney had in connection with the proceeding in question (6) temporal proximity between the conduct for which the attorney was disciplined and the proceeding in question, and (7) the nature and extent of the attorney's professional experience and accomplishments. While the underlying facts should be viewed in the light most favorable to the trial court's ruling, whether the facts establish incompetence as a matter of law is a question of law to be reviewed *de novo*. *See Thompson v. Keohane*, ⸺ U.S. ⸺, ⸺–⸺, 116 S.Ct. 457, 465–466, 133 L.Ed.2d 383 (1995); *Miller v. Fenton*, 474 U.S. 104, 117, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985).[8]

■ Reviewing the present case in light of the above standards, we hold that Longoria's suspension did not render him incompetent as a matter of law. The failure to respond to a grievance committee, even a pattern of failing to respond, does not indicate an inability to represent criminal defendants capably. While the committee did not affirmatively find that Longoria did not represent a threat to his clients or the public, the failure to make such a finding is not conclusive for two reasons. First, the "failure to make a finding" is not itself a "finding" and cannot, therefore, be a finding of incompetence. Second, even if it were a "finding," it could be a finding unrelated to incompetence. A lawyer who engages in barratry may be a threat to the public even though he is competent to practice law. Moreover, Longoria was suspended, not disbarred, from the practice of law. Under the circumstances presented,[9] appellant has failed to establish a complete denial of the right to counsel.

Because the Court of Appeals found a *per se* denial of counsel, it did not address appellant's *Strickland* claim. The judgment of the Court of Appeals is reversed, and the case is remanded to that court to address appellant's claim under *Strickland v. Washington*.

OVERSTREET, J., concurs in the result.

CLINTON, J., dissents.

As for Judge Baird's concern that this Court's credibility will be undermined by permitting disbarred attorneys to continue practicing criminal law, our opinion today does not permit the unauthorized practice of law. The disbarred attorney may well be subject to sanctions, both criminal and disciplinary, for practicing law without a license. Concerns about public confidence in the judicial system are implicated not only when disbarred lawyers practice but also when suspended lawyers practice during their suspension. We address those concerns in the body of this opinion and find that they weigh in favor of the case-by-case approach announced today.

the California Supreme Court decision in *Johnson*, Judge Baird contends, in a concurring opinion, that disbarment, by itself, results in an automatic Sixth Amendment violation rather than being a mere factor to consider on a case-by-case basis. These cases do not support his conclusion. *Erdelyan* held merely that the possibility of later disbarment did not establish ineffective assistance as a matter of law. 481 S.W.2d at 845. Such a statement does not mean that actual disbarment would necessarily deprive a person of "counsel" status under the Sixth Amendment, and nowhere in *Erdelyan* did we opine that disbarred counsel would result in an automatic Sixth Amendment violation. Likewise, no such language appears in *Pubrat*. While *Pubrat* expressly distinguished suspended attorneys from persons who never became attorneys, 548 N.W.2d at 598 ("it is possible that we would reach a different result if defendant's counsel had *never been admitted to the bar*" [emphasis added]), the Michigan court did not discuss disbarred attorneys. As for *Johnson*, the California court relied solely upon *state* constitutional law for its disbarment holding. 4 Cal.Rptr.2d at 176–177, 822 P.2d at 1323–1324. As the discussion in the body of this opinion shows, most federal circuits confronting the disbarment issue in the Sixth Amendment context have refused to apply a *per se* rule. *See Waterhouse, Mouzin,* and *Stevens*.

8. This multi-factored analysis concerning whether an attorney is incompetent as a matter of law due to the circumstances surrounding loss of licensure is a totally separate inquiry from the traditional *Strickland* analysis. Obviously, if an attorney is found incompetent as a matter of law under the standards we have set up today, there would be no need to inquire into attorney errors or prejudice.

9. We note that a person mounting an ineffective assistance claim has a right of access to all information relating to the attorney's discipline and may obtain access via court order as provided in Tex.R.Disc.P. 2.15.

BAIRD, Judge, concurring.

This case presents a very narrow issue, namely whether a defendant is *per se* denied effective assistance of counsel when represented by counsel who has been suspended from the practice of law. Even though this case is limited to attorneys who have been suspended, the majority needlessly expands the scope of this case to include attorneys who have been disbarred. The majority holds that representation by counsel who has been disbarred is not a *per se* denial of counsel under the Sixth Amendment. I respectfully disagree. For the following reasons, I believe attorneys who have been disbarred are *per se* ineffective.

### I.

It is necessary to briefly recite the facts regarding the disciplinary action taken against appellant's counsel, Daniel Quirino Longoria.

On May 27, 1993, the District 12–B Grievance Committee of the State Bar of Texas imposed on Longoria a three year suspension from the practice of law. Longoria was actively suspended for the first 12 months beginning June 1, 1993. The suspension was probated for the remaining 24 months. The grievance committee found Longoria knowingly failed to respond to the grievance committee's lawful demand for information, and followed a pattern of failing to respond or cooperate with the grievance committee. Longoria was also ordered to pay $1,430 in

---

1. Disciplinary Rule 8.04(a)(11) provides: "A lawyer shall not engage in the practice of law ... when the lawyer's right to practice has been suspended or terminated."

2. The Bar Journal states: "In another incident, [Longoria] was found to have violated DRs 1.01(b)(1) and (2), 1.02(a), and Rule 1.03(b) of the Texas Disciplinary Rules of Conduct." Although it is not clear, I assume this other incident is the May 27, 1993, suspension.

   The Texas Rules of Disciplinary Conduct provide in pertinent part:

   RULE 1.01 COMPETENT AND DILIGENT REPRESENTATION

   (b) In representing a client, a lawyer shall not:
   (1) neglect a legal matter entrusted to the lawyer; or
   (2) frequently fail to carry out completely the obligations that the lawyer owes to a client or clients.

attorneys' fees to the State Bar. 56 Tex.B.J. 1066 (Nov. 1993).

Pursuant to Tex.R.Disc.P. 2.19, notice of this suspension was sent by certified mail to Longoria's home, arriving June 3, 1993. Longoria stated he never opened the letter because he was preparing for appellant's trial, which took place from June 7, 1993, to June 11, 1993, and did not become aware of his suspension until he was personally served on June 15, 1993.

On March 18, 1994, the State Bar imposed a three year suspension, with the first year to be actively served after finding Longoria had practiced law while suspended for nonpayment of bar dues,[1] and for failing to comply with Minimum Continuing Legal Education (MCLE) requirements in violation of Tex.R.Disc. 8.04(a)(10). He was also ordered to pay $1,000 in attorney's fees and $100 restitution to a former client. 57 Tex.B.J. 1024 (Oct. 1994).[2] Also on March 18, 1994, the 332nd District Court of Hidalgo County suspended Longoria for three years, with the first year to be actively served. The Court found Longoria was hired to represent a client in a divorce proceeding. Longoria failed to file a petition for divorce and failed to account for the use of the fees which had been paid by the client in violation of Tex. R.Disc. 1.01(b)(1) and 1.03(a). *See*, n. 2, *supra.* He was ordered to pay $1,870 in attorneys' fees to the State Bar and $313 in restitution to his former client. This suspension ran concurrently with the other suspen-

---

RULE 1.02 SCOPE AND OBJECTIVES OF REPRESENTATION

(a) ... a lawyer shall abide by a client's decisions:
(1) concerning the objectives and general methods of representation;

RULE 1.03 COMMUNICATION

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation.

Tex.Gov't Code Ann., tit. 2, subtit. G, App. A, Art. 10, § 9.

sion imposed on March 18, 1994. 57 Tex.B.J. 1241 (Dec. 1994).

On Dec. 12, 1995, the Board of Disciplinary Appeals entered an order revoking Longoria's probation and imposing a twenty-four month suspension. The Board found Longoria violated a material condition of his May 27, 1993 probation in that he had not submitted to a psychological evaluation or executed required releases for medical information. 59 Tex.B.J. 178 (Feb. 1996).

## II.

The Sixth Amendment of the United States Constitution guarantees in "all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The right to counsel is binding upon the State in all felony prosecutions by operation of the Fourteenth Amendment. *Narvaiz v. State*, 840 S.W.2d 415, 433 (Tex.Cr.App.1992) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Furthermore, the right to counsel is the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). Effective counsel is an attorney who represents a defendant's interests necessary to achieve just results in the adversarial system. *Id.*, 466 U.S. at 685–686, 104 S.Ct. at 2063. Actual or constructive denial of counsel is presumed to prejudice the defendant. *Id.*, 466 U.S. at 692, 104 S.Ct. at 2067.

A member of the bar is presumed to possess the skills necessary to "fulfill the role in the adversary process that the [Sixth] Amendment envisions." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. In *McBrayer v. Cravens, Dargan, & Roberts*, 265 S.W. 694 (Com.App.1924) (adopted and entered as the judgment of the Supreme Court, per Cureton, C.J.), the Court held the suspension of an attorney is merely a temporary deprivation of the right to practice law:

> ... Suspension does not deprive an attorney of his office, but operates to deprive him temporarily of the right to practice his profession ... He remains a member of the profession, but has no right to engage in the practice during the period of suspension.... (citation omitted) The suspension or disbarment of an attorney is not intended as a punishment, but is intended as a measure of protection to the public and in a certain sense for the protection of the profession.

*Id.* at 694.

Because a suspended attorney is still a member of the bar, he does not necessarily lose the reasonable competence to effectively represent his clients. *See, People v. Pubrat*, 451 Mich. 589, 548 N.W.2d 595, 597 (1996). We cannot apply, therefore, a *per se* rule of ineffectiveness for suspended attorneys because "the justification for a [per se rule] disappears when application of the [rule] will not reach the correct result most of the time." *Coleman v. Thompson*, 501 U.S. 722, 737, 111 S.Ct. 2546, 2558, 115 L.Ed.2d 640, (1991). Instead, the effectiveness of a suspended attorney should be determined under the two prong standard of *Strickland*. The first prong is whether counsel's representation fell below an objective standard of reasonableness under prevailing social norms. If counsel's performance fell below the objective standard, the inquiry is whether there is a "reasonable probability" the result of the trial would have been different but for counsel's deficient conduct. A reasonable probability is a "probability sufficient to undermine the confidence in the outcome." *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Cr.App. 1993) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). In my view, the fact that counsel was suspended would make a *prima facie* showing of the first prong.

Thus, I agree with the majority that a suspended attorney is not *per se* ineffective; instead the determination of a suspended attorney's effectiveness should be made on a case-by-case basis. However, as explained below, my disagreement springs from the majority making the same holding for attorneys who have been disbarred.

## III.

In *Erdelyan v. State*, 481 S.W.2d 843 (Tex. Cr.App.1972), the defendant contended that, at the time of his plea, his attorney was

ineffective because he had been convicted of a felony in federal court. We held:

> At the time [defendant] pled guilty his attorney was not disbarred nor was he subject then or now to compulsory disbarment since his conviction in federal court is on appeal and is not a final conviction. His attorney was duly licensed and qualified at the time of appellant's plea and the potential ground of disbarment does not render his assistance ineffective as a matter of law.

*Id.* at 845. Implicit in this holding is that had the attorney been disbarred we would have found counsel *per se* ineffective counsel.

This implicit holding is consistent with other courts interpretations of *Erdelyan.* In *Ex parte Williams,* 870 S.W.2d 343, (Tex. App.—Fort Worth 1994), the Court held:

> First, in Texas, a disbarred lawyer is deemed incompetent to represent a criminal defendant as a matter of law. *Curry v. Estelle,* 412 F.Supp. 198, 200 (S.D.Tex. 1975), *aff'd,* 531 F.2d 1260 (1976); *see also Erdelyan v. State,* 481 S.W.2d 843, 845 (Tex.Cr.App.1972) ... As [the attorney] was disbarred prior to trial, he was not the counsel anticipated by our federal and state constitutions ... Representation by a disbarred lawyer is tantamount to no legal representation at all.

*Id.* at 347–348. Similarly, the trial judge in *Curry v. Estelle,* 412 F.Supp. 198 (S.D.Tex. 1975), *aff'd,* 531 F.2d 1260 (1976), held:

> ... In Texas, a lawyer is deemed incompetent to represent a criminal defendant as a matter of law when he has been finally convicted and disbarred by the State of Texas upon authorization of the Supreme Court of Texas. Until such time, the lawyer is a "practicing attorney" capable of rendering effective assistance. *See Erdelyan v. State,* 481 S.W.2d 843, 845 (Tex.Cr. App.1972).

*Id.* at 200.

Moreover, other jurisdictions support a *per se* rule of ineffectiveness for disbarred attorneys. In *People v. Pubrat,* 548 N.W.2d at 598, the Michigan Supreme Court determined "[a] person who becomes an attorney remains an attorney until formally disbarred or otherwise permanently separated from the bar. A suspension does not alter the formal status as an attorney."

Similarly, California holds that an attorney who has formally resigned from the practice of law is incompetent as a matter of law. *In re Johnson,* 1 Cal.4th 689, 4 Cal.Rptr.2d 170, 177, 822 P.2d 1317, 1324 (1992). The right to counsel is the right to an attorney admitted to practice before the California Supreme Court. *Id.,* 4 Cal.Rptr.2d at 176, 822 P.2d at 1323. Furthermore, in *People v. Sanchez,* 12 Cal.4th 1, 47 Cal.Rptr.2d 843, 869, 906 P.2d 1129, 1155 (1995), the California Supreme Court reiterated its earlier assertion and held an attorney subject to disciplinary proceedings during his representation of defendant was not *per se* ineffective. The attorney was not disbarred until after trial, and until that time was competent to practice law. *Id.,* 47 Cal.Rptr.2d at 866, 906 P.2d at 1152.

Unlike a suspended attorney, a disbarred attorney has been expelled from the legal profession, and is no longer deemed qualified to practice law. Therefore, representation by a disbarred attorney is a *per se* denial of counsel.[3]

With these comments, I join only the judgment of the Court.

MANSFIELD, J., joins this opinion.

---

**3.** This conclusion is supported by our past opinions where we have stated the State Bar is the appropriate forum for allegations of unethical conduct. *See, Armstrong v. State,* 897 S.W.2d 361, 366, n. 5 (Tex.Cr.App.1995); *and, Brown v. State,* 921 S.W.2d 227, 230 (Tex.Cr.App.1996). It would only serve to undermine our credibility if, after making these statements, the State Bar disbarred an attorney and we permitted that attorney to continue to practice criminal law.