**Mehdi MAZRATIAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–01283–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 31, 1997.

Rehearing Overruled Nov. 19, 1997.

**354**

Thomas Steinmeyer, Houston, for Appellant.

John B. Holmes, Sandra J. Pomerantz, Houston, for Appellee.

Before MIRABAL, O'CONNOR and BASS [1], JJ.

## EN BANC OPINION

MIRABAL, Justice.

Appellant, Mehdi Mazratian, was found guilty of assault by a jury. The trial court assessed punishment at one-year confinement, probated for two years, $1,000 in restitution, a fine of $295, and enrollment in a domestic violence treatment program. We affirm.

The main issue in this case is whether trial counsel is *per se* ineffective if he consumes alcoholic beverages during the day of trial.

Complainant, Michelle Eddington, testified as follows: As of January 12, 1993, her relationship with appellant was coming to an end. That night, appellant came over to her apartment, and sometime later they went to appellant's parents' home. Appellant was upset because he had received a deportation notice.

They left appellant's parents' home about 9:00 p.m. While they were driving, they talked about his deportation notice. Appellant started screaming about how he hated the United States and Americans. When he called complainant an obscene name, she began to cry. She told him that if he really hated the U.S. so much he should get the hell out. He then backhanded her, causing her head to hit the passenger's window. At a red light, she jumped out of the car and ran. Appellant parked his car, chased her, caught her, and forced her into the car, causing her to hit her head on the door frame and her back on the gear shift. Again, she managed to get out and run. Appellant caught her again, and she agreed to get in the car again if he did not touch her.

1. The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Complainant further testified that when they arrived at her apartment, appellant pushed her inside. They argued some more, and finally they agreed not to see each other again. After appellant had left, complainant decided to return the mountain bike appellant had given her as a Christmas gift. She rode the bike over to appellant's apartment, and they talked about ending their relationship. Appellant then took her home.

According to complainant, the next day, January 13, 1993, appellant left a message on complainant's answering machine saying he wanted to talk and to return some things to her. She assumed he was going to return some money she had lent him. Appellant arrived about six that evening, and told her he could not pay her the money he owed her. She walked outside with him and they sat in his car. They began to talk about his deportation notice, and she tried to suggest what he could do to stay in the United States. He screamed at her and called her obscene names.

Complainant thought appellant was going to hit her. As she was trying to get out of the car, she put up her hands and accidentally hit appellant in the face. She ran toward her apartment, but appellant grabbed her and pushed her into the apartment. Appellant grabbed her throat, picked her up, shook her, called her an obscene name, and told her he hated her. He slammed her down into the sofa, picked her up again by the throat, and slammed her down into the floor. He got on top of her, choked her, and told her he could kill her if he wanted to. She thought he was going to do it.

Complainant further testified appellant went outside with complainant in tow. She asked him to leave and pushed him away. Appellant grabbed her by the hair and pushed her face down in the dirt and rubbed her face in it. She begged him to leave; when he finally did, she called 911. While she was calling 911, appellant came back into her apartment. Appellant grabbed the phone and hung it up. Complainant ran into the bedroom, and appellant followed her. Appellant finally left when a friend of complainant's arrived.

Appellant was charged by information with misdemeanor assault against complainant occurring on January 12, 1993. Appellant was also charged by separate information with misdemeanor assault against complainant occurring on January 13, 1993. Both causes were joined for trial. The jury found appellant guilty of the January 13, 1993 assault, but acquitted appellant of the January 12, 1993 charge. Appellant received a probated sentence.

## Procedural Background

On September 26, 1994, the parties selected a jury. On September 27, the trial began and the State presented its case; later that day, appellant began his case. After trial that day, the trial judge asked appellant's defense counsel to come to his office. In chambers, counsel admitted to the judge that during his lunch he had two beers "and was working on a third one when I looked at the clock and came back." Sometime later that day, trial counsel told appellant about the conference in the judge's chambers.

On the morning of September 28, 1994, the third day of trial, appellant presented a letter to the trial court requesting a mistrial on the ground his attorney was under the influence of alcohol on the second day of trial and, therefore, was ineffective. Appellant complained in the letter that his trial counsel did not question the witnesses in an effective manner and forgot to address important points.

As a result of the letter, the trial court conducted a hearing on the record. At the hearing, appellant testified that his trial counsel had represented him for a year and a half. Appellant admitted his counsel conducted a 30-minute voir dire and had asked the venirepersons coherent questions. Appellant did not notice if his counsel slurred his speech while asking questions. Appellant agreed his counsel walked fairly well with a steady pace. He said he did see some shaking when his counsel approached a witness or approached the bench. Appellant further testified he smelled alcohol on his counsel's breath on September 27. When asked if there were signs of intoxication other than the smell of alcohol, appellant said trial coun-

sel "did not listen to anything I told him to say." However, he later agreed that this did not indicate trial counsel was intoxicated.

At the hearing, appellant's trial counsel admitted to drinking three beers on the second day of trial with his beef and coleslaw lunch, but he denied he was intoxicated. He opined he had presented a fairly decent case on cross-examination, and he thought his direct examination of a witness from San Antonio presented a valid alibi defense for one of the assault charges. He also said he had been drinking nothing but coffee so far that morning.

The judge then ruled there was not sufficient cause to grant a mistrial. Noting this was the third day of trial and the only remaining witness to testify was appellant himself, the judge said:

> I am going to take the action necessary to protect the interest of the accused in this case and to protect the interest of justice concerning all of the parties involved. I have asked Attorney Gene Jones to assist the Court and he will join Mr. Hendrix as co-counsel in this case for the duration of the trial. I believe there is one more witness left for the defense. I am going to continue the case until 1:15. That will give you an opportunity to visit Mr. Jones who is a respected member of the Bar and either he or Mr. Hendrix can continue the direct examination of you if you decide to take the stand. We will complete this trial under that format. I don't believe that sufficient causes [sic] exists at this time for me to grant a mistrial.

The trial court gave Jones two and one-half hours to confer with the defendant. After the recess, Jones asked the court for permission to withdraw appellant's "not guilty" plea and go to the court for punishment. The prosecutor objected to the defense attempt to go to the judge for punishment and informed the court that the State did not want to enter a plea agreement with the appellant. The court denied the appellant permission to withdraw the "not guilty" plea.

Jones then made a *motion for a continuance* for time to review the facts with appellant; in the alternative, Jones asked for a

mistrial. The court permitted Jones to conduct a hearing to support the motions; appellant was the witness.

At that hearing, appellant testified that he hired Hendrix on the recommendation of a friend of his father's and Hendrix was highly recommended. On the morning of the second day of trial, he smelled alcohol on Hendrix's breath. The smell became more pronounced after lunch. Appellant, as a dentist, knew from medical training about the effects of alcohol on the body and on mental faculties. Based on his medical and religious training, appellant did not feel Hendrix could represent him because it takes more than 12 hours for alcohol to clear the body and one's judgment will be impaired based on that. Appellant wanted to discharge Hendrix because he was under the influence of alcohol during the trial, and he wanted another lawyer to represent him.

The trial court denied Jones's motions for continuance and for mistrial. Jones then asked the court for permission to withdraw as counsel because it was too late in the trial for him to have any effect on the trial. Jones said he could not provide any meaningful representation without an opportunity to prepare. The court granted Jones's motion to withdraw, and Hendrix began the direct examination of appellant.

In points of error one and two, appellant complains he was denied effective assistance of counsel as required under the U.S. Constitution and the Texas Constitution because his defense counsel was incapacitated and because his defense counsel's law license was suspended. *See* U.S. CONST. amend. 6; U.S. CONST. amend. 14; TEX. CONST. art. I, §§ 10, 19.

A hearing was held on appellant's motion for new trial based on these claims. When a defendant claims he did not have effective assistance of counsel during trial, the decision whether to grant a motion for new trial is within the trial court's discretion. *Messer v. State,* 757 S.W.2d 820, 827 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). In considering a motion for new trial, the trial judge has the discretion to assess the credibility of witnesses and weigh the evi-

dence to determine whether a different result would occur upon retrial. *Id.*

 The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex.Crim. App.1995). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). An isolated failure to object to certain procedural mistakes or improper evidence does not necessarily constitute ineffective assistance of counsel. Neither is counsel rendered ineffective merely because counsel may have made a mistake during trial and other counsel might have tried the case differently. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). Thus, to obtain a reversal because of ineffective assistance, appellant must show that: (1) counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Craig v. State*, 825 S.W.2d 128, 129 (Tex. Crim.App.1992).

### Ineffective assistance due to suspension of license

 In point of error two, appellant complains the trial court erred in denying his motion for new trial because he was not represented by counsel. Specifically, appellant argues his defense counsel's (Hendrix's) license was suspended because he did not comply with minimum continuing legal education requirements. At the motion for new trial hearing, the trial court admitted into evidence a letter from the Supreme Court of Texas stating Hendrix was suspended from the active rolls of the state bar on June 16, 1994, for noncompliance with minimum continuing legal education requirements and was

not as of November 15, 1994, "authorized to practice as an attorney" in Texas.

Recently, the Texas Court of Criminal Appeals addressed the question of whether an attorney's suspension for not responding to demands for information from the State Bar Grievance Committee caused an appellant a complete denial of the right to counsel. *Cantu v. State*, 930 S.W.2d 594, 596 (Tex.Crim. App.1996). The court refused to apply a *per se* rule of ineffectiveness for attorneys suspended under such circumstances, and remanded the case to address that appellant's claim under the standard in *Strickland. Id.* at 603.

Similarly, in this case, appellant's attorney's license was suspended at the time of trial. However, his suspension for not complying with MCLE requirements does not amount to a *per se* denial of effective assistance. *See Cantu*, 930 S.W.2d at 602–03. Thus, appellant still has the burden of proving his attorney did not meet the *Strickland* standard. Accordingly, we overrule point of error two.

### Ineffective assistance due to consumption of alcohol on day of trial

 In his first amended motion for new trial, appellant asserted that as a result of his trial counsel's drinking, trial counsel did not effectively voir dire the veniremen, cross-examine the State's witnesses, or conduct a proper examination of the defense witnesses. At the motion for new trial hearing, appellant relied solely on the statement of facts from the September 28 hearing on his motions for mistrial and continuance. At the conclusion of the motion for new trial hearing, the trial court stated the following on the record:

THE COURT: In regards to the defense's Motion for New Trial on the basis of the impairment or incapacitation of the defense attorney, the Court reviewed Defense Exhibit No. 1 which is a hearing that was granted to the defendant in Cause Nos. 9303825 and 9309354 whereby the Court felt a duty to inquire as to the allegations being made by the defendant against his attorney. The Court allowed both the State and the defense to examine and cross-examine pertinent witnesses,

specifically Mr. Don Hendrix as the defense attorney for the defendant and then subsequently allowed both sides an opportunity to question the defendant himself, Mr. Mehdi Mazratian, on the contention of the letter. At that time and at this time the Court is of the opinion that the defense attorney was not incapacitated nor impaired to such a degree as to jeopardize the adequate and reasonable representation of the defendant before the fact finder. Secondly, the Court also finds that appropriate action was taken by the Court at the time the matter was raised as I just dictated into the record. The Court further concludes that the defense attorney in this record did not represent the defendant in such a manner as to render said representation ineffective assistance of counsel as I understand the law on that particular subject. The Court found then and finds today that defense counsel was a reasonable advocate for the defendant in both cross-examination of the State's witnesses and direct examination of the defense's witnesses and also initially in the jury selection process handled by Mr. Hendrix. The Court also must look at the issue raised by the outcome which was a verdict of not guilty on one case and a verdict of guilty on the other case. I believe that the verdicts are prima facie evidence of the effective assistance of the defense counsel in advocating for his client.

The Court lastly but more importantly finds that the right to counsel cannot be mandated as to destruct or delay the procedure of the Court and the facts establish that the Court had gone to great pains to prepare this case for trial. The case was filed on January 25th, 1993 and tried before a jury on September 26th of 1994. The case had been reset one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen times and the Court believes that the defendant received a fair trial with a competent defense attorney that advocated his interests throughout the proceeding.

The trial court properly considered the totality of the representation of appellant during the trial. Appellant had the burden of proving the ineffectiveness of his counsel by a preponderance of the evidence. *Rodriguez*, 899 S.W.2d at 665. Appellant failed to meet his burden.

Although trial counsel admitted to drinking three beers at lunch, there was no evidence that trial counsel's performance was adversely affected as a result of his consumption of the beers.

Further, the second prong of *Strickland* has not been met. Appellant was actually acquitted of one of the two charges against him, and he received a probated sentence on the other charge. Appellant has not shown that there is a reasonable probability that, but for trial counsel's consumption of alcohol, the result of the trial would have been different.

 Claims of ineffective assistance of counsel can only be sustained if they are firmly founded in the record. *Rodriguez*, 899 S.W.2d at 665. The trial judge observed trial counsel's performance throughout the three-day trial, which included voir dire of the jury panel, cross-examination of four state witnesses, direct examination of four defense witnesses, and closing arguments. A trial judge possesses broad discretion in assessing the credibility of witnesses and in weighing the evidence. *Messer*, 757 S.W.2d 820 at 827. The trial judge did not abuse his discretion in this case.

Accordingly, we overrule appellant's first point of error.

In points of error three and four, appellant complains the trial court erred in overruling his motion for continuance and his alternative motion for mistrial during trial. Appellant argues that Hendrix had been drinking and his newly-appointed counsel, Jones, needed time to prepare.

 The granting or denial of a motion for continuance or a motion for mistrial is within the sound discretion of the trial court, and reversal of a judgment is justified only if the trial court abused its discretion. *Ex parte Hernandez*, 906 S.W.2d 931, 932 (Tex. Crim.App.1995) (mistrial); *Hernandez v. State*, 643 S.W.2d 397, 399 (Tex.Crim.App. 1982) (motion for new trial). For the reasons already articulated, we hold the trial court

did not abuse its discretion when it overruled appellant's motions for continuance or for mistrial.

We overrule points of error three and four.

We affirm the judgment.

O'CONNOR, J., dissenting, with BASS, J., joining.

On Justice MIRABAL's motion for en banc consideration, SCHNEIDER, C.J., and COHEN, WILSON, HEDGES, ANDELL, TAFT and NUCHIA, JJ., voted to grant en banc consideration.

O'CONNOR, J., voted to deny en banc consideration.

SCHNEIDER, C.J., and COHEN, WILSON, HEDGES, TAFT and NUCHIA, JJ., join Justice MIRABAL's opinion.

ANDELL and BASS, JJ., join Justice O'CONNOR's dissent.

O'CONNOR, Justice, dissenting.

I respectfully dissent from the majority's resolution of points of error two through four.

## A. Ineffective Assistance Due to Intoxication

Every defendant is entitled to be represented by a lawyer who is not only competent, but also is sober. The trial judge noticed the lawyer representing appellant was inebriated even before appellant made a complaint about it.

The record shows throughout the second day of trial the appellant's trial counsel, Don L. Hendrix, was argumentative, could not properly state objections, and was once threatened with contempt. The appellant argued, in his motion for new trial, that Hendrix did not effectively voir dire the veniremen, cross-examine the State's witnesses, or conduct a proper examination of the defense witnesses.

The appellant's letter to the judge complaining about Hendrix's drinking did not address these points. However, the appel-

lant's letter did request a mistrial on the ground that Hendrix was under the influence of alcohol on the second day of trial. As a result, the trial court conducted a hearing on September 28, 1994, to address the appellant's concerns about Hendrix's drinking on the second day of trial.[1]

In my opinion, the appellant met the first prong of the *Strickland* test, which requires the appellant to demonstrate that his counsel's performance was deficient because it fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). By objective standards, it is unreasonable for defense counsel to drink alcoholic beverages during trial. The appellant, a dentist, gave his medical opinion that alcohol takes about 12 hours to clear the body and affects one's mental faculties and ability to exercise good judgment.

Hendrix admitted to drinking three beers during the trial; the appellant claimed it must have been more. The issue is whether Hendrix's drinking interfered with his performance at trial. *Even before appellant wrote the letter,* something about Hendrix's performance during the trial came to the attention of the trial judge that prompted him to call Hendrix into his chambers to discuss his drinking. What behavior caused the trial court to suspect Hendrix had been drinking was not disclosed on the record. After the hearing, which was prompted by the appellant's letter, the trial court admitted there was a due process problem with Hendrix's representation when it said it could "salvage the due process requirements" by appointing another attorney to serve as co-counsel.

In my opinion, the appellant also met the second prong of the *Strickland* test, which requires the appellant to demonstrate there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The trial court admitted there was a due process problem that could be resolved by the appoint-

---

1. In preparing the letter and when he was on the stand answering questions about the letter, the appellant in effect, was unrepresented because he was opposing his own lawyer.

ment of a co-counsel, but then refused to take any steps suggested by Gene Jones, the newly appointed co-counsel. The temporary appointment of Jones did not "salvage" any of the appellant's due process rights, which were put in jeopardy by Hendrix's condition. Jones made reasonable requests, which the court denied: a motion to withdraw the appellant's plea of not guilty, a motion for a continuance to prepare for the rest of the trial, and a motion for a mistrial when the other two motions were denied. It was Jones's opinion that he could not effectively represent the appellant without time to prepare. As a result, Jones withdrew from the case, and the appellant was forced to finish the trial with Hendrix as his trial counsel.

I would sustain point of error two.

### B. Motion for Continuance & Motion for Mistrial

In his motion for continuance and his alternative motion for mistrial, the appellant argued Hendrix had been drinking and his newly-appointed counsel, Jones, needed time to prepare.

On the third and last day of the trial, the trial court denied the appellant's request to terminate Hendrix; but, in an abundance of caution, the trial court appointed Jones to assist Hendrix for the defense's one remaining witness—the appellant himself. The appellant's newly appointed attorney, Jones, was given two and one-half hours to confer with the appellant. When the time expired, Jones moved to continue the trial or for a mistrial so that he could go over the facts with appellant. The trial court denied both of those motions, Jones withdrew, and Hendrix proceeded with the examination of appellant.

The trial court solved no due process problems by appointing Jones and then refusing to permit him time to prepare. An appointed counsel is entitled to 10 days preparation time under TEX.CODE CRIM.P. art. 1.051(e)(Vernon Supp. 1997), unless waived. This case is distinguishable from *Roney v. State*, 632 S.W.2d 598 (Tex.Crim.App.1982) and *Henry v. State*, 433 S.W.2d 430 (Tex.Crim.App.1968) in which the Court of Criminal Appeals found compliance with article 1.051(e) if the defendant was represented by more than one counsel, and one of the counsel was accorded the 10-day statutory preparation time. *Roney*, 632 S.W.2d at 601; *Henry*, 433 S.W.2d at 432–33. Appellant was effectively without counsel due to Hendrix's inebriated condition. Two and one-half hours is not sufficient time to prepare when a lawyer is summoned to assist in the middle of trial under these circumstances.

The trial court appointed Jones for the purpose of avoiding any due process problems created by Hendrix's condition, but then refused all of Jones's suggestions. The motion for continuance would have easily resolved the due process problems. The trial court interpreted the continuance as a means to delay the trial, but in fact delay was necessary after the trial court appointed Jones. If the trial court did not want to inconvenience the jury by a mid-trial delay, the court could have granted the mistrial.

I would hold the trial court abused its discretion in overruling appellant's motion for continuance and alternative motion for mistrial. I would sustain points of error three and four and reverse and remand for retrial.

ANDELL and BASS, JJ., join this dissent.

