In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00211-CR
______________________________


WARREN HUDSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 00-F-392-005


                                                 



Before Morriss, C.J., Ross and Cornelius,* JJ.
Opinion by Justice Ross
*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N

          Warren Hudson was convicted by a jury for possessing marihuana in the amount
of five pounds or less but more than four ounces, a state jail felony.


 The jury assessed
his punishment at two years' confinement and a $5,000.00 fine.


 Hudson appeals,
contending (1) the evidence is legally and factually insufficient to prove he possessed the
marihuana; (2) the trial court erred in continuing the punishment phase of trial in his
absence; (3) the trial court erred in its response to questions from the jury; (4) the State's
remarks during closing argument were manifestly improper; and (5) he received ineffective
assistance of counsel. 
Factual Background
          On January 26, 2000, Hudson and his passenger, Keith Macklin, were stopped on
Interstate 30 by Officer Gary Brown of the Texarkana, Texas, Police Department, for
speeding. Hudson provided his driver's license and advised the officer the car was rented. 
Hudson provided the rental papers reflecting he had rented the car in Memphis the
previous day. He then advised the officer he had been to Dallas for three or four days at
the Six Flags amusement park. Brown became suspicious because of the inconsistency
between Hudson's statement about how long he had been in Dallas and the date reflected
on the rental agreement as to when and where he rented the car, and also because of the
officer's own belief that Six Flags is closed in winter. Brown asked for and received
Hudson's verbal and written consent to search the vehicle. Officer Johnny Weaver, acting
as backup, watched Hudson and Macklin at the rear of the vehicle while Brown conducted
the search. Brown testified that, when he reached in the vehicle to turn off the engine, he
smelled the odor of marihuana. Brown then retrieved a drug-sniffing dog to assist with the
search. The dog alerted to the trunk of the vehicle. Brown opened the trunk and again
smelled the strong odor of marihuana. The dog again alerted to a suitcase inside the
trunk. Brown was confident at this point he was about to make a drug arrest, so he
ordered Hudson and Macklin to lie on the ground. Brown testified Hudson immediately
obeyed the order, but Macklin made a pitching motion from behind his back, throwing a
handgun that he had concealed on his person, and then he laid on the ground.


 Inside the
suitcase, 4.86 pounds of marihuana and 1,064.16 grams of cocaine were discovered,
along with some clothing. Brown testified he then had Hudson and Macklin stand, read
them the Miranda


 warnings, and each acknowledged he understood the rights. 
          At the police station, and under questioning by Brown, Hudson verbally advised 
Brown and police officer Mark Henry that he and Macklin had paid $2,500.00 for the
marihuana in Dallas, that they were taking it to Memphis, and that a Hispanic male asked
them to transport the cocaine from Dallas to Memphis for him. Hudson declined the offer
to reduce his statement to writing. 
Sufficiency of the Evidence
          Hudson contends the evidence is legally and factually insufficient to support his
conviction. He contends that he was not in exclusive possession of the place where the
drugs were found and that the State failed to establish an affirmative link between him and
the drugs which would allow the jury to find, beyond a reasonable doubt, that he knew of
and was in control of the drugs. 
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our
review, we evaluate all the evidence in the record, both direct and circumstantial, whether
admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 

          In contrast, a factual sufficiency review dictates that the evidence be viewed in a
neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). In determining the factual sufficiency of the
evidence to establish the elements of the offense, we view all the evidence in a neutral light
and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129. 
          To support a conviction for possession, the state must show that the accused
exercised actual care, custody, or control over the substance, that he or she was conscious
of his or her connection with it, and that the accused possessed the substance knowingly
or intentionally. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Roberts v.
State, 963 S.W.2d 894, 898 (Tex. App.—Texarkana 1998, no pet.). The evidence on
these elements can be direct or circumstantial. Brown, 911 S.W.2d at 747. The state
must establish that the accused's connection with the substance was more than just
fortuitous. Id. When the contraband is not found on the accused's person or it is not in his
or her exclusive possession, additional facts must affirmatively link the accused to the
contraband. McMillon v. State, 940 S.W.2d 767, 768–69 (Tex. App.—Houston [14th Dist.]
1997, pet. ref'd); Menchaca v. State, 901 S.W.2d 640, 651 (Tex. App.—El Paso 1995, pet.
ref'd); Green v. State, 892 S.W.2d 220, 222 (Tex. App.—Texarkana 1995, pet. ref'd). The
link, however, need not be so strong that it excludes every other reasonable hypothesis
except the defendant's guilt. Brown, 911 S.W.2d at 748. The affirmative link ordinarily
emerges from an orchestration of several factors and the logical force they have in
combination. Villegas v. State, 871 S.W.2d 894, 896 (Tex. App.—Houston [1st Dist.] 1994,
pet. ref'd).
          Some factors on which various courts have relied to provide this affirmative link
include: (1) the place where the contraband was found was enclosed; (2) the contraband
was conveniently accessible to the accused; (3) the accused was the owner of the place
where the contraband was found; (4) the quantity of the drugs found; (5) the accused
possessed a key to the locked location of the drugs; (6) a tip by an informant that the
accused was in possession of contraband; (7) the accused was in close proximity to a
large quantity of contraband; (8) drug paraphernalia was found on or in plain view of the
accused; (9) whether the defendant made incriminating statements when arrested; and
(10) whether there was an odor of contraband. See Washington v. State, 902 S.W.2d 649,
652 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); Green, 892 S.W.2d at 222; Chavez
v. State, 769 S.W.2d 284, 288–89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). The
number of the factors is not as important as the logical force the factors have in
establishing the elements of the offense. Gilbert v. State, 874 S.W.2d 290, 298 (Tex.
App.—Houston [1st Dist.] 1994, pet. ref'd). Possession need not be exclusive, and
evidence showing joint possession with another is sufficient. Martinez v. State, 880
S.W.2d 72, 77 (Tex. App.—Texarkana 1994, no pet.).
          Hudson contends the State failed to show facts and circumstances which
affirmatively link him to the marihuana and the cocaine. He points out that the clothing 
found inside the suitcase was never matched to a particular individual. There are
significant factors, however, linking Hudson to knowledge and control of the contraband. 
Hudson rented the vehicle in which the marihuana and cocaine were found and, as the
driver, was in possession of the keys. The quantities of marihuana and cocaine were
large, and were discovered in an enclosed suitcase in the enclosed trunk of the car. See
Cabrales v. State, 932 S.W.2d 653, 656–57 (Tex. App.—Houston [14th Dist.] 1996, no
pet.) (narcotics found in enclosed place inside vehicle driven by defendant). Brown
testified he smelled the odor of marihuana in both the passenger compartment of the
vehicle and in the trunk. Further, Hudson verbally admitted to the officers he knowingly
exercised custody and control of the marihuana and the cocaine. On review of the record,
we find legally and factually sufficient evidence to support Hudson's conviction.
Defendant's Absence
          The guilt/innocence phase of the trial against Hudson was tried to a jury October 1,
2002. The jury returned a guilty verdict, and the trial proceeded to the punishment phase
October 2. Hudson and another witness, Reginald Bowles, testified on Hudson's behalf
at the punishment phase. After the testimony at this phase concluded, the court recessed
for a short time to provide the attorneys an opportunity to make any objections to the jury
charge on punishment. It was apparently during this recess the trial court was advised
Hudson had left the courthouse. The trial court stated in open court that the bailiff had
made a diligent effort to locate Hudson, but to no avail. The court concluded Hudson had
voluntarily absented himself, stating:
I am advised where [Hudson's] car was parked earlier today, it's no longer
there, . . . .
 
          . . . .
 
          Mr. Hudson has been here at all times during the trial until now, and
we have now spent an hour approximately, looking for him. It appears that
he's not here, and has voluntarily left on his own behalf.
 
          . . . .
 
His car is gone. He's gone. His friend that came to testify apparently is
gone, and [defense counsel does not] know where they are. 
The trial court ordered the issuance of a capias for Hudson's arrest. Defense counsel
moved to withdraw and also moved for a continuance. Both were denied, and the trial
continued with the jury charge and closing arguments. The record reflects that, shortly
after defense counsel began closing arguments, the trial court was informed Hudson had
been apprehended by the sheriff's department in Hempstead County near Hope, Arkansas. 
The court informed both attorneys, but neither gave any response to the court or made any
reference before the jury to Hudson's apprehension. The cause was submitted to the jury,
which then returned a verdict assessing punishment at two years' confinement and a
$5,000.00 fine. The sentence, in accordance with the jury's verdict, was pronounced by
the trial court, with Hudson in attendance, October 28, 2002. 
          Hudson contends the trial court erred by continuing the punishment phase of trial
in his absence. Article 33.03 of the Texas Code of Criminal Procedure provides in relevant
part: 
          In all prosecutions for felonies, the defendant must be personally
present at the trial, and he must likewise be present in all cases of
misdemeanor when the punishment or any part thereof is imprisonment in
jail; provided, however, that in all cases, when the defendant voluntarily
absents himself after pleading to the indictment or information, or after the
jury has been selected when trial is before a jury, the trial may proceed to its
conclusion. When the record in the appellate court shows that the defendant
was present at the commencement, or any portion of the trial, it shall be
presumed in the absence of all evidence in the record to the contrary that he
was present during the whole trial.
 
Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 1989). In most instances, the appellate
court must determine, from hindsight, the validity of the trial court's determination that the
defendant's absence was voluntary. Moore v. State, 670 S.W.2d 259, 261 (Tex. Crim.
App. 1984). The defendant must provide evidence to refute the trial court's determination,
or we will not disturb the trial court's finding. Id. 
          The trial court did not err in finding that Hudson's absence was voluntary. The
competent evidence shows Hudson was not absent because of some unexpected medical
emergency, but because he chose to flee. Hudson was advised that the recess (during
which he chose to flee) was to be brief, and neither the court nor his attorney received any
communication from him or others to explain his absence. See id. Hudson's car was
gone, and shortly thereafter, it was learned he was apprehended by the sheriff's
department in Hempstead County, Arkansas. No information was offered by Hudson to
show his absence was involuntary. The trial court, therefore, did not err in determining
Hudson's absence was voluntary and proceeding with the conclusion of the trial. 
Jury Notes
          During the punishment phase, the trial court responded to two jury notes:
QUESTION: What happens if we cannot come to agreement on the amount
of time or fine?
COURT'S RESPONSE: If after prolonged deliberations the court finds that
you cannot agree then a mistrial would be granted. 
 
QUESTION: Are senteces [sic] concurrent?
COURT'S RESPONSE: Yes. 
 
Hudson contends the trial court erred in these communications with the jury in violation of
Article 36.27 of the Texas Code of Criminal Procedure, which provides as follows:
Any communication relative to the cause must be written, prepared by the
foreman and shall be submitted to the court through the bailiff. The court
shall answer any such communication in writing, and before giving such
answer to the jury shall use reasonable diligence to secure the presence of
the defendant and his counsel, and shall first submit the question and also
submit his answer to the same to the defendant or his counsel or [sic]
objections and exceptions, in the same manner as any other written
instructions are submitted to such counsel, before the court gives such
answer to the jury, but if he is unable to secure the presence of the
defendant and his counsel, then he shall proceed to answer the same as he
deems proper. The written instruction or answer to the communication shall
be read in open court unless expressly waived by the defendant. 
 
All such proceedings in felony cases shall be a part of the record and
recorded by the court reporter. 

Tex. Code Crim. Proc. Ann. art. 36.27 (Vernon 1981).

          Hudson argues the court gave written answers to the jury's questions: 1) without
making such proceedings part of the record and recorded by the court reporter; 2) without
the record showing that Hudson was present or that reasonable diligence was used to
secure his presence; and 3) without his waiving the requirements of Article 36.27. 
          The State contends defense counsel was present when each question was read by
the court and, after discussion and agreement by both counsel, the court submitted written
answers to the jury. Hudson points out there is nothing transcribed by the court reporter
in the record about these jury communications and the court's responses. Likewise, there
is nothing in the record regarding an express waiver by Hudson of the requirement that the
trial court's answers to the jury's communications be read in open court. There is also no
indication Hudson or his counsel was afforded the opportunity to object to the court's
answers.
          The giving of additional instructions to a jury by the trial court without compliance
with the statute requiring such communication to be in open court and in the presence of
the defendant constitutes reversible error. Smith v. State, 513 S.W.2d 823, 829 (Tex.
Crim. App. 1974). It is incumbent on a defendant, however, to bring the easily correctable
error to the court's attention by objection or formal bill of exception. Otherwise, the acts
of the trial court are presumed consistent with the statute. Green v. State, 912 S.W.2d
189, 192 (Tex. Crim. App. 1995); Smith, 513 S.W.2d at 829; Talley v. State, 909 S.W.2d
233, 235 (Tex. App.—Texarkana 1995, pet. ref'd); Williamson v. State, 771 S.W.2d 601,
604–05 (Tex. App.—Dallas 1989, pet. ref'd); Adwon v. State, 708 S.W.2d 564, 569 (Tex.
App.—Houston [1st Dist.] 1986, no pet.). We are not to decide cases based on
speculation about matters not shown in the record. Green, 912 S.W.2d at 192. In the
absence of a showing in the record to the contrary, we presume the trial court's response
was in compliance with the statute. Id. There is no showing here by either objection or bill
of exception as to the presence of Hudson's counsel, whether Hudson had returned to the
court, or whether Hudson waived the mandates of the statute. Therefore, no reversible
error is shown.
Jury Argument
          Hudson contends the State made manifestly improper jury arguments. He points
to the following remarks made during the State's closing argument at the guilt/innocence
phase of trial:
          And I want you, Ladies and Gentlemen, to take this matter very
seriously, because what we're trying to do, is we have a war on drugs going
on, and it's been going on for years, we're going to do our part to continue
the battle. We're not going to turn away, and look away, and give this man
a reason to say, oh, hey, it's okay. I can--you know--I can do it. I can run it
right through Bowie County, it's no big deal. It affects people's lives, Ladies
and Gentlemen. We all know that. It affects all of us. Whether it be our tax
dollars, whether it be our children--
 
          [Defense Counsel]: --objection, Your Honor, out of the record--
 
          [Trial Court]: Overruled.
 
          [Prosecutor]: Whether it be our tax dollars, whether it be our children,
whether it be each of us, what we are trying to do as far as protecting our
families, because the bottom line is, Ladies and Gentlemen, drugs lead to
other crimes.
 
          In general, proper jury argument includes four areas: (1) summation of the evidence
presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the
opposing counsel's argument; or (4) a plea for law enforcement. Jackson v. State, 17
S.W.3d 664, 673 (Tex. Crim. App. 2000). To constitute reversible error, the argument must
be manifestly improper or inject new, harmful facts into the case. Id. Hudson contends 
the argument does not fall within any of the above categories, and improperly implied that
"the jury had any control over our tax dollars, our children, and our families." 
          The State contends the argument was a permissible plea for law enforcement. A
proper plea for law enforcement includes encouraging the jury to do something about crime
and arguing that society is currently waging a war against it. Smith v. State, 846 S.W.2d
515, 518 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). In making such a plea for law
enforcement, it is permissible for the prosecutor to comment about the war on crime and
the respective parts played in that war by the police, prosecutors, court, and jury. Martinez
v. State, 826 S.W.2d 807, 808 (Tex. App.—Texarkana 1992, no pet.) (citing Decker v.
State, 717 S.W.2d 903 (Tex. Crim. App. 1983); Holloway v. State, 525 S.W.2d 165, 170
(Tex. Crim. App. 1975); Chatman v. State, 509 S.W.2d 868 (Tex. Crim. App. 1974); Sparks
v. State, 161 Tex. Crim. 100, 275 S.W.2d 494 (1955); see also Johnson v. State, 773
S.W.2d 721 (Tex. App.—Houston 1989, pet. ref'd)). In addition, the state may argue the
impact of the jury's verdict on the community. Alexander v. State, 919 S.W.2d 756, 764
(Tex. App.—Texarkana 1996, no pet.) (citing Borjan v. State, 787 S.W.2d 53, 56 (Tex.
Crim. App. 1990); Adams v. State, 685 S.W.2d 661, 671 (Tex. Crim. App. 1985); Stone v.
State, 574 S.W.2d 85, 90 (Tex. Crim. App. [Panel Op.] 1978)). Here, it is clear from the
total context of the prosecutor's remarks that he was asking the jury to take the war on
drugs seriously because of the effect drugs have on the community and to do their part as
jurists in that war. This is a proper plea for law enforcement. 
          The use of the words "our tax dollars" in this argument, however, was outside the
record and improper. See State v. Majors, 323 P.2d 917, 920 (Kan. 1958); State v. Perry,
142 N.W.2d 573, 579–80 (Minn. 1966); State v. Pierce, 439 N.W.2d 435, 445–46 (Neb.
1989); State v. Muskus, 109 N.E.2d 15, 18 (Ohio 1952). Nonetheless, Hudson made no
request for an instruction to disregard the prosecutor's remarks. Such an instruction is
usually sufficient to cure error. Johnson v. State, 583 S.W.2d 399, 408 (Tex. Crim. App.
[Panel Op.] 1979). Based on the total context of the prosecutor's argument, the inclusion
of the words "our tax dollars" in that argument was not so prejudicial that an instruction to
disregard would not have cured the alleged harm.
Ineffective Assistance of Counsel
          Hudson first contends he received ineffective assistance of counsel because, at the
time of his trial, defense counsel was suspended from the practice of law. Hudson
contends his counsel, Clyde Lee, was suspended from the practice of law in the State of
Texas July 23, 2002 until February 21, 2003, because of his failure to complete the
mandatory continuing legal education (MCLE) requirements. Hudson's trial was held 
October 1–2, 2002. No motion for new trial was filed, and the only evidence of Lee's
suspension from the practice of law is appellate counsel's assertions. Even if Lee's
suspension for MCLE violations is accurate and before us, we find it does not amount to
ineffective assistance of counsel. 
          Hudson points out that any practice of law during a suspension constitutes
professional misconduct and subjects the member to discipline. See Tex. State Bar R.
art. III, § 2, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G. app. (Vernon 1998). The
suspension of trial counsel's law license before trial does not, however, result in a per se
denial of Hudson's Sixth Amendment right to effective assistance of counsel. Cantu v.
State, 930 S.W.2d 594, 602 (Tex. Crim. App. 1996). Instead, an inquiry into the facts of
the case and the reason for the suspension are required. 
A suspended or disbarred attorney is incompetent as a matter of law if the
reasons for the discipline imposed reflect so poorly upon the attorney's
competence that it may reasonably be inferred that the attorney was
incompetent to represent the defendant in the proceeding in question. It is
possible that the reasons for discipline could be so egregious that the
attorney would not be competent to represent any criminal defendant. Or,
the reasons for discipline might in some way be relevant to the attorney's
responsibilities in the proceedings in question so as to give rise to an
inference that the attorney was incompetent to participate in those particular
proceedings.
 
Id. 
          The Texas Court of Criminal Appeals noted several relevant nonexclusive factors
for determining whether an attorney is incompetent as a matter of law: (1) severity of the
sanction (suspension versus disbarment; length of suspension); (2) the reasons for the
discipline; (3) whether the discipline was based on an isolated incident or a pattern of
conduct; (4) similarities between the type of proceeding resulting in discipline and the type
of proceeding in question; (5) similarities between kinds of conduct resulting in the
attorney's discipline and any duties or responsibilities the attorney had in connection with
the proceeding in question; (6) temporal proximity between the conduct for which the
attorney was disciplined and the proceeding in question; and (7) the nature and extent of
the attorney's professional experience and accomplishments. Id. at 602–03. 
          The inquiry into whether an attorney is incompetent due to the circumstances
surrounding loss of licensure is a matter of law reviewed de novo. Id. at 603. This inquiry
is totally separate from the traditional Strickland analysis. Id. at 603 n.8. If an attorney is
found incompetent as a matter of law, there is no need to inquire into attorney errors or
prejudice. Id. 
          In Cantu, defense counsel was suspended for failing to respond to demands for
information from the State Bar Grievance Committee. The court found that the failure to
respond, even a pattern of failing to respond, did not render him incompetent as a matter
of law or indicate an inability to capably represent criminal defendants. Id. at 603. 
Likewise, the failure to stay current on the MCLE requirements did not render Lee
incompetent as a matter of law. The failure to complete the required MCLE requirements
is not an indispensable condition of attorney competence. The State Bar Rules promulgate
the "purpose of minimum continuing legal education requirements is to ensure that every
active member of the State Bar of Texas pursues a plan of continuing legal education
throughout his or her career in order to remain current on the law in our rapidly changing
society." Tex. State Bar R. art. XII, § 1, reprinted in Tex. Gov't Code Ann., tit. 2, subtit.
G. app. (Vernon 1998). The failure to satisfy the MCLE requirements may relate to a
lawyer's knowledge of current law and recent changes and, thus, relate to his or her
competence as a lawyer. Such failure, however, does not automatically mean such lawyer
is not knowledgeable of current law and recent changes. It is possible for a lawyer, by his
or her own initiative, to be knowledgeable of current law, but still fail to satisfy the formal
requirements of the MCLE. We, therefore, cannot say Lee's failure to stay current on
those requirements necessarily reflects so poorly on his competence that he was
ineffective in his representation of Hudson. See Mazratian v. State, 961 S.W.2d 353, 357
(Tex. App.—Houston [1st Dist.] 1997, no pet.); Henson v. State, 915 S.W.2d 186, 195
(Tex. App.—Corpus Christi 1996, no pet.).
          Texas courts have uniformly held that a defendant is not denied effective assistance
of counsel merely because her or his attorney was under suspension for a mere technical
defect or violation. See Hill v. State, 393 S.W.2d 901, 904 (Tex. Crim. App. 1965)
(attorney's nonpayment of bar dues insufficient to find violation of right to counsel). The
court in Henson, 915 S.W.2d at 195, likened the failure to pay bar dues to the failure to
complete the MCLE requirements. The court found that an attorney does "not suddenly
become incompetent merely because he failed to comply with the State Bar's Minimum
Continuing Legal Education requirements." Id. While the MCLE requirements promote
attorney competence, the failure to complete them does not render an attorney
incompetent as a matter of law or indicate an inability to represent criminal defendants
capably. It should not be said that an attorney is competent one day, and incompetent the
next, because of the failure to satisfy the MCLE requirements. Hudson, therefore, was not
denied effective assistance of counsel as a matter of law because of his counsel's alleged
suspension. 
          Hudson alleges other grounds to support his contention he received ineffective
assistance of counsel. These include his lawyer's failure to: (1) file a motion for new trial;
(2) request a hearing on any pretrial motions; and (3) object to the trial court's written
communication with the jury in violation of Article 36.27. 
          The traditional standard of testing claims of ineffective assistance of counsel is set
out in Strickland v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional
claims in Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on
this claim, an appellant must prove by a preponderance of the evidence (1) that his or her
counsel's representation fell below an objective standard of reasonableness, and (2) that
the deficient performance prejudiced her or his defense. Strickland, 466 U.S. at 687; 
Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the
appellant must prove that the attorney's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for the attorney's
deficiency, the result of the trial would have been different. Tong v. State, 25 S.W.3d 707,
712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's
representation so undermined the proper functioning of the adversarial process that the
trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686. 
          Our review of counsel's representation is highly deferential; we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Id. at 689; Tong, 25 S.W.3d at 712. This Court will not second-guess through hindsight the
strategy of counsel at trial, nor will the fact that another attorney might have pursued a
different course support a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979). That another attorney, including appellant's counsel on appeal,
might have pursued a different course of action does not necessarily indicate ineffective
assistance. Harner v. State, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). 
Any allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999).



          As far as strategic or tactical reasons for counsel's action or inaction, in the absence
of direct evidence of counsel's reasons for the challenged conduct, an appellate court will
assume a strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436,
440 (Tex Crim. App. 2001). We will not conclude the challenged conduct constitutes
deficient performance unless the conduct was so outrageous no competent attorney would
have engaged in it. Id.; see also Thompson, 9 S.W.3d at 814.
1. Failure to file a motion for new trial 
          Hudson contends he was denied effective assistance of counsel by his counsel's
failure to file a motion for new trial. He contends the failure to file a motion for new trial
has, perhaps, prevented this Court from determining whether his absence from the
punishment phase of trial was voluntary.
          When a motion for new trial is not filed in a case, there is a rebuttable presumption
the defendant was counseled by his or her attorney regarding the merits of the motion and
ultimately rejected the option. Oldham v. State, 977 S.W.2d 354, 362–63 (Tex. Crim. App.
1998). This presumption will not be rebutted when there is nothing in the record to suggest
otherwise. Smith v. State, 17 S.W.3d 660, 662–63 (Tex. Crim. App. 2000) (presumption
not rebutted where defendant filed notice of appeal pro se in which he alleged counsel was
ineffective and defendant subsequently appeared without counsel to sign pauper's oath
and request new counsel); Oldham, 977 S.W.2d at 363 (presumption not rebutted where
defendant filed a notice of appeal pro se and an affidavit of indigency on twenty-eighth day
after sentencing and, on twenty-ninth day, a notation was made in a court document stating
attorney of record on appeal was "to be determined").
          In accordance with the above-cited cases, there is nothing in the record to rebut the
presumption that Hudson was adequately counseled regarding the merits of a motion for
new trial and ultimately rejected the option. Hudson filed a notice of appeal pro se, which
is evidence he was informed of at least some of his appellate rights. Smith, 17 S.W.3d at
662–63. There is no evidence in the record that Hudson was interested in the option of
filing a motion for new trial and that counsel did not adequately assist him in doing so. See
Prudhomme v. State, 28 S.W.3d 114, 119 (Tex. App.—Texarkana 2000, no pet.) (motion
to withdraw plea filed pro se was affirmative evidence appellant sought option of filing
motion for new trial). Therefore, nothing in the record exists to rebut the presumption that
Hudson was adequately informed of his right to file a motion for new trial and that he
ultimately rejected the option. 
2. Failure to request a hearing on pretrial motions
          Hudson contends defense counsel's failure to request a hearing on pretrial motions
deprived him of effective assistance of counsel. The failure to file pretrial motions is not
categorically deemed ineffective assistance of counsel because trial counsel may decide
not to file pretrial motions as part of his or her trial strategy. See Hammond v. State, 942
S.W.2d 703, 710 (Tex. App.—Houston [14th Dist.] 1997, no pet.); Wills v. State, 867
S.W.2d 852, 857 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). In this case, Hudson's
initial trial counsel filed numerous pretrial motions,


 but Lee, as subsequent trial counsel,
elected not to pursue a hearing on any of the motions. The decision not to pursue the
motions could have been part of trial counsel's trial strategy because rulings on the
motions may not have assisted with the defense, or the State may have had an open file
policy regarding the evidence in the case. In any event, the record does not affirmatively
demonstrate that the failure to obtain the rulings was due to counsel's ineffectiveness. See
Thompson, 9 S.W.3d at 813.
3. Failure to object to jury communication
          Hudson contends he received ineffective assistance from counsel's failure to object
to the trial court's written communication with the jury in violation of Article 36.27. While
the failure to preserve error is an instance of deficient performance, Hudson's defense was
not prejudiced by this deficiency. 
          As previously discussed, the giving of additional instructions to a jury by the trial
court without compliance with the statute requiring such communication to be in open court
and in the presence of the defendant constitutes reversible error. Smith, 513 S.W.2d at
829. The failure to object or offer a bill of exception, however, waives error on appeal. Id. 
The failure to preserve error in regard to Article 36.27 has been viewed as an instance of
deficient performance by trial counsel. See Williamson v. State, 771 S.W.2d 601, 608
(Tex. App.—Dallas 1989, pet. ref'd). 
          Likewise, these communications were additional instructions on the law. Where
communications are not carried out in strict accord with Article 36.27, courts will find no
reversible error when such communications do not amount to additional instructions on the
law or some phase of the case, such as communication regarding "administrative matters."
Jones v. State, 963 S.W.2d 826, 829 (Tex. App.—Texarkana 1998, pet. ref'd) (jury told it
could deliberate short time longer before it would be required to recess for day found to be
administrative matter); Collins v. State, 762 S.W.2d 670, 673 (Tex. App.—Tyler 1988, no
pet.); see also McFarland v. State, 928 S.W.2d 482, 517 (Tex. Crim. App. 1996) (response
of "No" to request for definition of "society" not additional instruction); Martin v. State, 654
S.W.2d 855, 857 (Tex. App.—Dallas 1983, no pet.) (court instructed jury to continue
deliberation after receiving note jury unable to reach decision). 
          In this case, the jury was given instructions on the law of the case. It was instructed
that a "mistrial would be granted" if it could not reach a unanimous decision and that the
sentences would run concurrently. Both were responses from the court which instructed
the jury on the law of the case, and neither could be termed an administrative matter. See
Tex. Code Crim. Proc. Ann. art. 36.31 (Vernon 1981), art. 42.08 (Vernon Supp. 2004).
          The instructions the trial court gave, however, were correct responses under the law,
and as such, Hudson has failed to show harm or prejudice to his defense under the second
prong of Strickland. In Williamson, the defendant was charged with burglary of a building. 
The defendant, while carrying a microwave down the street, was apprehended by police. 
Williamson, 771 S.W.2d at 604. The owner of the building which was allegedly burglarized
verified that a microwave oven, along with other property, had been removed from the
building. Id. During deliberations, the jury sent out a note to the trial court which read,
"Was the microwave positively identified as the one taken from the photo lab?" Id. The
trial court replied to this note as follows: "In reply to your above note you are instructed
that the witness Charles Drobena testified that he compared the serial number from his
records to the microwave taken by the police and that it was the one removed from his
business." Id. The mandates of Article 36.27 were not followed, and defense counsel
waived error by not objecting or making a bill of exception. Id. at 605. The court found that
the failure to preserve error for review was an instance of deficient performance by trial
counsel. Id. at 608–09. The court also found harm from the fact that the trial court's
response to the jury's question was unequivocal, whereas the only testimony on the subject
was not as clear and direct as the trial court's answer suggested. Id.
It was the State's burden (and not the trial court's) to make that connection
if there was one. See Wright v. State, 603 S.W.2d 838, 840 (Tex. Crim. App.
1980) (op. on reh'g). It was the jury's province (and not the trial court's) to
choose to make the connection or inference. See Tex. Code Crim. Proc.
Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon 1979); Penagraph v.
State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Moreover, the jury's
question concerning the issue is further evidence of the equivocal nature of
the testimony. Surely, this is the type of situation that articles 36.27 and
36.28 are designed to prevent. "Judges should studiously avoid any remark
calculated to convey to the jury their opinion of the case." Brown v. State,
475 S.W.2d 938, 947 (Tex. Crim. App. 1971), overruled on other grounds,
Bradford v. State, 608 S.W.2d 918 (Tex. Crim. App. 1980); see Tex. Code
Crim. Proc. Ann. art. 38.05 (Vernon 1979). 
 
Id. at 609.
          In this case, unlike Williamson, the trial court properly instructed the jury on the law. 
See Tex. Code Crim. Proc. Ann. arts. 36.31, 42.08. No harm has been shown by Hudson
from his trial counsel's failure to object to the mandates of Article 36.27. The result of the
trial would not have been different had Hudson's attorney properly objected. The trial court
properly instructed the jury, and the defendant's presence or the reading of the instruction
in open court would not have changed the trial court's instructions to the jury or reasonably
affected the outcome of the trial.
 

Conclusion
          We affirm the judgment.

                                                                Donald R. Ross
                                                                Justice 
  
 
Date Submitted:      January 22, 2004
Date Decided:         February 5, 2004

Publish