**Appellant's Motion for Rehearing Overruled; Opinion of August 7, 2012 Withdrawn; Affirmed as Modified and Substitute Majority and Concurring Memorandum Opinions filed October 25, 2012.**



In The

# Fourteenth Court of Appeals

---

NO. 14-11-00727-CR
NO. 14-11-00728-CR
NO. 14-11-00729-CR

---

**SAMUEL WADE HENDERSON, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

---

**On Appeal from the 228th District Court
Harris County
Trial Court Cause Nos. 1315583, 1315584 & 1315585**

---

## SUBSTITUTE MAJORITY MEMORANDUM OPINION

We issued our original memorandum opinion modifying and affirming the trial court's judgments on August 7, 2012. Appellant Samuel Wade Henderson moved for rehearing. We overrule the motion for rehearing, vacate our August 7 judgment,

withdraw our previous memorandum opinion, and issue this substitute majority memorandum opinion in its place. Our disposition of the appeal is unchanged.

Henderson appeals his jury conviction on three counts of burglary of a habitation with intent to commit sexual assault. On appeal, Henderson raises three issues: (1) his trial counsel rendered ineffective assistance by repeatedly referring to two extraneous offenses; (2) trial counsel's suspension from the practice of law during the pendency of the case resulted in a denial of counsel in violation of the Sixth Amendment; and (3) the trial court erred by ordering that Henderson's sentences run consecutively.

I

Henderson was indicted on three counts of burglary of a habitation with intent to commit sexual assault. Each complainant lived in the Texas Medical Center area when she was attacked, and the attacks all occurred within a four-month period in 2009. A Combined DNA Index System (CODIS) "hit" identified Henderson as a potential suspect, and on March 7, 2010, he was questioned by the police. Henderson confessed to the three offenses. After his indictment, Henderson retained his trial counsel, Charles Brown.

On December 20, 2010, Brown signed a judgment with the State Bar of Texas to resolve complaints alleging deficient performance in several criminal cases. The judgment suspended Brown's law license from December 18, 2010, through December 18, 2013, but it was partially probated so that Brown was not authorized to practice law from December 18, 2010, through January 17, 2011. Henderson's trial took place in August 2011, eight months after Brown's active suspension ended.

Each of the three complainants, L.H., S.L., and L.B., testified at Henderson's trial. L.H. testified that in June 2009, a man broke into her apartment in the Medical Center, pinned her down, and sexually assaulted her. She was able to give police a description of her attacker and later identified Henderson from a police photo array, but she could not identify Henderson in court. S.L. testified that in October 2009, a man broke into her

2

apartment in the Medical Center, punched and strangled her, and sexually assaulted her. S.L. testified that because the man had a stocking over his face the entire time, she was unable to identify him to police. Also in October 2009, L.B. was in her apartment getting ready for work one morning when a man broke in. L.B. struggled with the man, who hit her and tried to choke her as he attempted to sexually assault her. L.B. was unable to see the man's face during the attack.

Because each complainant provided a similar physical description of her attacker, police investigating the cases believed the three offenses were related. The police developed Henderson as a suspect based on the information from CODIS, and then brought him in for questioning. After an officer read Henderson his *Miranda* rights, he confessed to the three crimes and provided corroborating information. Other possible suspects that had been identified were ultimately ruled out. A DNA-testing specialist testified that Henderson could not be excluded as a contributor to the DNA saliva profile taken from S.L.'s left breast.[1] A crime-scene investigator who searched Henderson's vehicle found screwdrivers, wire cutters, and pry bars inside, which he testified can be used as burglary tools.

Testifying in his defense, Henderson denied that he committed the offenses, and claimed that he only confessed because the officers were threatening to harass his family. According to Henderson he had decided to just tell the officers what they wanted to hear, knowing that "eventually [he] would get [his] chance to tell [his] side of the story."

The jury found Henderson guilty of the offenses charged and assessed punishment of life in prison and a $10,000 fine in each case. The trial court granted the State's motion to cumulate the sentences. Henderson filed a motion for new trial, which was denied after a hearing. This appeal followed.

---

[1] The DNA expert testified that the probability that an unrelated, random African-American male would be present in the sample was one in 9.6 million.

II

A

An accused is entitled to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 687; *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson*, 9 S.W.3d at 813 (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson*, 9 S.W.3d at 813. There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 142–43. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142.

When direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143. Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

If a criminal defendant can prove trial counsel's performance was deficient, he still must prove he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if the trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett*, 65 S.W.3d at 63.

B

In his first issue, Henderson contends Brown rendered ineffective assistance of counsel "by repeatedly speaking about two extraneous offenses whose introduction cannot be supported by any claim of trial strategy and was not supported by any investigation at all" in violation of the Sixth Amendment of the United States Constitution. During his opening statement, Brown argued that the evidence would show that Henderson only became a suspect because a DNA database linked his DNA to an alleged sexual assault from 1990, but because Henderson was incarcerated at the time of that sexual assault, it could not be his DNA, and therefore the same DNA erroneously made him a suspect in this case.[2] But a police officer testified that, based on his review of

---

[2] Specifically, Brown told the jury the following:

. . . But I believe the evidence is going to show that what put them on the track of Mr. Henderson was an alleged rape in October of 2000 -- of 1990. And they say that that was

5

Henderson's criminal-history records, Henderson was not incarcerated in 1990. On cross-examination, Henderson also testified that he was not incarcerated at the time of the 1990 sexual assault.

Henderson maintains that his case is analogous to *Garcia v. State*, 308 S.W.3d 62 (Tex. App.—San Antonio 2009, no pet.). In *Garcia*, the court held that defense counsel was ineffective because, among other deficiencies, he repeatedly elicited testimony from the defendant that opened the door to evidence of a similar extraneous offense and other bad acts. *Id.* at 68–69. The court concluded that "no reasonable trial strategy" could explain defense counsel's actions, especially when his strategy was "based almost entirely on the defendant's credibility versus the complainant's credibility." *Id.* Ultimately, the court held that the totality of the representation prejudiced Garcia when his counsel not only called Garcia to testify about prior bad acts, but also gave erroneous community-supervision advice resulting in jury waiver and failed to realize that the applicable statute did not authorize "outcry" testimony. *Id.* at 75–76.

Henderson contends that Brown's representation was similarly deficient because Brown failed to investigate whether his client was incarcerated in 1990—either by checking public records or simply asking his client—before proceeding with the "highly damaging strategy" of introducing two extraneous offenses. In response, the State argues that the record is silent concerning Brown's reasoning or strategy and Henderson has not shown that Brown's conduct was so outrageous that no competent attorney would have engaged in it. *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) ("The record in this case is insufficient to support the conclusion [that appellant received

---

his DNA. And they used that as a CODIS hit to follow to him. The problem with that is that Mr. Henderson was incarcerated at that point in time. And obviously if he's incarcerated, he couldn't have been out and committing sexual assaults.

Brown also focused on the other possible suspects the police investigated. Toward the end of the State's case, however, Brown asserted he was no longer advancing that theory. From the record, it appears that Brown based his belief that Henderson was incarcerated in 1990 on a murder conviction Henderson received in 1989. But, as revealed during trial, Henderson was already out on parole in 1990.

ineffective assistance of counsel] because appellant did not develop a record in the trial court for the purpose of establishing this claim."). We agree with the State.

The trial record reflects that Brown attempted to advance a strategy to discredit what arguably could have been the most damaging evidence—the DNA evidence linking Henderson to one of the crimes. In hindsight, counsel's strategy appears unsound in light of the evidence adduced at trial; however, a reasonable strategic motivation can be gleaned from the record. *See Lopez*, 343 S.W.3d at 143. The record is silent concerning how counsel developed the strategy, what investigation he undertook in preparing the strategy, and whether and to what extent he discussed the strategy with his client. Henderson filed a motion for new trial, but ineffective assistance of counsel was not raised in the motion or during the hearing on the motion.[3]

Ordinarily, counsel should be accorded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *Bone*, 77 S.W.3d at 836. When counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Jackson v. State*, 877 S.W2d 768, 771 (Tex. Crim. App. 1994). In this case, it is possible that Brown's conduct could have been grounded in legitimate trial strategy, even if poorly executed. The possible existence of some legitimate trial strategy distinguishes this case from *Garcia*, in which the court concluded that no reasonable trial strategy could explain why defense counsel elicited damaging testimony from his client. *See Garcia*, 308 S.W.3d at 68–69. Absent any evidence from Brown explaining his actions, the record in

---

[3] In his motion for new trial, Henderson alleged that he was denied his constitutional right to counsel because his attorney had been suspended and thus was incompetent as a matter of law. In this context, Brown was asked what investigation he conducted in preparing this case, and he stated that he reviewed the records produced by the district attorney's office and discussed them with Henderson, reviewed Henderson's statement, drove to the scenes of the events, and investigated the DNA analysis. He was not asked about his trial strategy and did not volunteer any information to shed light on his thoughts or reasoning concerning that strategy.

this case is inadequate to review Henderson's claim of ineffectiveness. Henderson has therefore failed to rebut the presumption that counsel's decisions were reasonable. *See Lopez*, 343 S.W.3d at 143–44.

Even assuming Brown's conduct was deficient, the State argues that Henderson has not demonstrated that Brown's actions prejudiced him. The State points out that Henderson could not be excluded from the DNA evidence found on S.L. and he confessed to the three offenses, giving unique details of each offense to corroborate his confession.

Henderson contends, however, that a competent attorney would have explored defensive issues Brown did not, including L.H.'s failure to identify Henderson in court and Henderson's disavowal of his confession. However, L.H. testified at length and was cross-examined concerning the events leading up to the identification of her assailant. Even though L.H. did not recognize Henderson in court, L.H. testified that she recognized him "within 10 seconds" of viewing his picture in the photo array she was shown. She also worked with a police-department sketch artist shortly after the assault, and the sketch was admitted into evidence for the jury to compare to Henderson's appearance. Concerning Henderson's confession, he explained that he feared the police would send news reporters to his mother's house to harass his family. Henderson does not argue that his counsel should have attacked the confession on some other basis.

Henderson also contends a competent attorney could have "explored the scientific data underpinning the DNA results" in S.L.'s case and developed reasonable doubt based on her inability to identify her assailant. Although S.L. testified that she was unable to identify her assailant because he wore a stocking over his face, Henderson points to nothing in the record that would cast doubt on the scientific underpinnings of the DNA evidence linking him to S.L. Thus, Henderson has failed to demonstrate a reasonable probability that the result of the proceeding would have been different if his trial counsel had acted professionally. We overrule Henderson's first issue.

# C

In his second issue, Henderson contends that Brown "lost his license for misconduct during the pendency of this case, resulting in a denial of counsel in violation of the Sixth Amendment." Henderson maintains Brown's suspension rendered him incompetent as a matter of law. *See Cantu v. State*, 930 S.W.2d 594 (Tex. Crim. App. 1996). Further, Henderson maintains that this denial of counsel is structural error not subject to a harm analysis.

In *Cantu v. State*, the Texas Court of Criminal Appeals held that the suspension of trial counsel's law license before trial does not necessarily result in a per se denial of a defendant's Sixth-Amendment right to effective assistance of counsel. *Id.* at 602. The court explained that "a never-been-licensed layman" could never be considered "counsel" under the Sixth Amendment and therefore representation by such a person would always constitute a complete denial of counsel. *Id.* For attorneys who were once validly licensed but have subsequently been suspended or disbarred, however, a case-by-case determination is warranted:

> A suspended or disbarred attorney is incompetent as a matter of law if the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question. It is possible that the reasons for discipline could be so egregious that the attorney would not be competent to represent *any* criminal defendant. Or, the reasons for discipline might in some way be relevant to the attorney's responsibilities in the proceedings in question so as to give rise to an inference that the attorney was incompetent to participate in those particular proceedings.

*Id.* The court then listed the following relevant factors in determining whether an attorney is incompetent as a matter of law:

> (1) severity of the sanction (suspension versus disbarment; length of suspension),
> (2) the reasons for the discipline,

9

(3) whether the discipline was based upon an isolated incident or a pattern of conduct,

(4) similarities between the type of proceeding resulting in discipline and the type of proceeding in question,

(5) similarities between kinds of conduct resulting in the attorney's discipline and any duties or responsibilities the attorney had in connection with the proceeding in question,

(6) temporal proximity between the conduct for which the attorney was disciplined and the proceeding in question, and

(7) the nature and extent of the attorney's professional experience and accomplishments.

*Id.* at 602–03. While the underlying facts should be viewed in the light most favorable to the trial court's ruling, whether the facts establish incompetence as a matter of law is a question of law to be reviewed de novo. *Id.* at 603. If an attorney is found incompetent as a matter of law, the court is not required to "inquire into attorney errors or prejudice." *Id.* at n.8; *see also Johnson v. State*, 169 S.W.3d 223, 229 (Tex. Crim. App. 2005).

Henderson contends that, applying *Cantu*'s seven-factor test, Brown was not competent to represent any criminal defendant, let alone Henderson, who was charged with three first-degree felonies. He argues that the three-year, partially probated suspension was a severe discipline; the suspension was imposed mainly for professional negligence involving thirteen separate grievances for criminal matters; the same conduct was implicated in this case; and Brown had "no discernible professional experience and accomplishments in criminal law." Instead, Henderson argues, Brown is board-certified in oil and gas law which, Henderson alleged, "could not be more different than criminal practice."

Because the facts surrounding Henderson's claims were presented in a hearing on his motion for new trial and several witnesses, including Brown, testified at the hearing, we view the evidence in the light most favorable to the trial court's ruling. *See Cantu*, 930 S.W.3d at 596. During the hearing, an "Agreed Judgment of Partially Probated Suspension," dated December 20, 2010, was admitted into evidence. The agreed

10

judgment reflects that the Commission for Lawyer Discipline found that Brown had committed professional misconduct during his representation of thirteen clients. The misconduct included neglecting legal matters entrusted to him, failing to explain legal matters to the client to the extent reasonably necessary, failing to keep the client reasonably informed about the status of the legal matter, and failing to promptly comply with reasonable requests for information. The judgment provided for the following sanctions:

> It is AGREED and ORDERED that the sanction of a Partially Probated Suspension shall be imposed against Respondent in accordance with the Texas Rules of Disciplinary Procedure. Accordingly, it is ORDERED, ADJUDGED, and DECREED that Respondent be suspended from the practice of law for a period of thirty-six (36) months, beginning December 18, 2010 and ending December 17, 2013. Respondent shall be actively suspended from the practice of law for a period of one (1) month beginning December 18, 2010 and ending January 17, 2011. The thirty-five (35) month period of probated suspension shall begin on January 18, 2011 and shall end on December 17, 2013.

Brown was also ordered to pay restitution to some of the clients.

Brown acknowledged at the motion-for-new-trial hearing that he had been disciplined by the State Bar of Texas over his representation of thirteen clients in misdemeanor traffic and other criminal matters. He also admitted that the agreed judgment required him to serve an active suspension from December 18, 2010 to January 17, 2011, a portion of which was during the pendency of this case.[4] Although Brown did not recall telling Henderson about the suspension, he stated that he sent Henderson's mother a letter, dated December 17, 2010, concerning the suspension.

Brown testified that he was board-certified in oil and gas law. He also testified that he had represented clients in criminal cases for about thirty years. Brown stated that he

---

[4] Brown testified that Henderson hired him "shortly after" the criminal case began in March 2010. The trial court granted Brown's motion to substitute himself as retained counsel in place of Henderson's appointed counsel on May 19, 2010.

11

had tried between ten and twenty felony jury trials in Harris County and other counties, and had won acquittals in some of them. Brown testified that he had never been disciplined or sanctioned before. He believed he was sanctioned primarily "for failing to show up for court on time" and recalled that the dates of the misconduct were between 2008 and 2009. Brown also testified that neither Henderson nor his family raised any complaints concerning his legal representation before the start of the trial.

Henderson testified that Brown did not tell him he had been disciplined, and if he had, Henderson probably would have tried to find other counsel. Henderson acknowledged, however, that he chose Brown to represent him, he has never filed a grievance against Brown, and he never tried to hire another lawyer. Henderson also testified that he was satisfied with Brown's legal services, stating, "I thought he did the best he could with what he had, yes, I did." At the conclusion of the hearing, the trial court denied Henderson's motion for new trial.

Applying the *Cantu* factors and viewing the evidence presented in the light most favorable to the trial court's ruling, we cannot say that "the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question." *See id.* at 602. In *Cantu*, the attorney's law license was suspended on June 1 until at least June 15, when the attorney received notice of the suspension. *Id.* at 596. Between June 1 and June 15, Cantu's trial took place and his attorney unknowingly represented him with a suspended law license. *See id.* Here, Henderson's attorney had a suspended law license from December 18, 2010 until January 17, 2011. Henderson's trial took place eight months later, in August 2011, long after Brown's one-month's active suspension had ended.

Concerning similarities between the types of proceedings and the conduct resulting in discipline, Brown was disciplined for a pattern of conduct involving thirteen other clients in criminal matters, which does relate to his competence to represent

12

Henderson and to practice law generally. However, although Henderson complains that Brown had "no discernible professional experience and accomplishments in criminal law," Brown testified that he had represented clients in criminal cases for about thirty years, and during that time he had tried more than ten felony cases. Brown also testified that he had never been disciplined before, and he described the basis for the disciplinary action as primarily failing to timely make court appearances. The record contains little else about the nature of the clients' grievances that led to the disciplinary action other than counsel's remark that all of them were "fairly similar."

On this record, Henderson has failed to establish that the circumstances of Brown's suspension rendered him incompetent as a matter of law. Accordingly, we apply a *Strickland* analysis to Henderson's complaint that Brown was not competent to represent him due to his suspension. *See id.*

Henderson does not alternatively argue that he would prevail under a *Strickland* analysis, and we have already addressed his ineffectiveness claim. Moreover, there is no allegation or evidence that Brown either deceived Henderson about the status of his law license or that he practiced law in violation of the orders suspending and reinstating his license. The evidence showed that, as ordered, Brown sent the following letter addressed to Henderson and his mother:

> Dear Client,
>
> Happy Holidays, based upon an agreement with the S.B.O.T. I hereby designate attorney Scott Thomas to act for me during my absence between the period of December 17, 2010 to January 17, 2011 but only upon request of the court and in the event of an emergency. Such designation is effective only with the consent of my client. I can assure you that your case will be professionally handled and considered a priority by Attorney Thomas. During my absence, I am unable to provide you with any legal services or advice, however, on January 18, 2011, I shall return and assume authority once again over your case.

Significantly, the record does not show that Brown conducted any legal services on Henderson's case during the pendency of his suspension. Instead, the record shows that

Henderson was represented by a licensed attorney at all times. That Brown was suspended for one month, eight months before appellant's trial, does not meet the first prong of *Strickland*. *See Strickland*, 466 U.S. at 687; *Mallett*, 65 S.W.3d at 62. We overrule Henderson's second issue.

### III

In his third issue, Henderson contends the trial court erroneously granted the State's request to stack his sentences. The State concedes Henderson is correct. The proper remedy for an unlawfully entered cumulation order is the reformation of the judgment to delete the order. *See Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008). Accordingly, we modify the judgments in cause numbers 1315584 and 1315585 to delete the cumulation orders, and affirm the judgments as modified. The judgment in cause number 1315583, which does not contain a cumulation order, is affirmed in full without modification.

* * *

For the foregoing reasons, we modify the trial court's judgments in cause numbers 1315584 and 1315585 and affirm the judgments as modified. We further affirm in full the judgment in cause number 1315583.

/s/    Jeffrey V. Brown
        Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown (Hedges, C.J., concurring).

Do Not Publish — TEX. R. APP. P. 47.2(b).